GEORGE G. SICKLES, Appellant, *v.* DANIEL FLANAGAN et. al., Respondents.

In a case tried by the court, a finding of fact, without evidence to support it, if excepted to, presents a question of law subject to review in this court.

In an action to foreclose a mortgage for $2,500, the defense was usury. The court found that the mortgage and accompanying bond were executed to one H., not as a security, but only for the purpose of being sold to plaintiff at a discount; that they were so sold and were usurious. Defendants' evidence was to the effect that F., the mortgagor, before the execution of the bond and mortgage, applied to plaintiff for a loan of $2,500, that plaintiff directed him to go and make a mortgage to somebody else, that he could buy it of them, and would loan the money. No terms of loan were stated, and no property specified to be mortgaged. H. held judgments against F. to the amount of about $900. The bond and mortgage were executed to secure this indebtedness. H. also advanced thereon $320, and it was understood that the balance realized on sale of the securities after paying the judgments and the money advanced was to be paid to F. They were offered to other parties before plaintiff purchased, and were sold to him at a discount *Held*, that the evidence did not sustain the finding; that the defense of usury was not made out, but only as to part of the sum secured a failure or want of consideration; that the bond and mortgage were valid securities in the hands of H. for the amount of his judgments and the sum advanced by him, and to that extent, at least, plaintiff, standing in the place of H., could enforce them.

As to whether plaintiff would be entitled to recover any more than the amount due H., *quære.*

(Submitted November 26, 1879; decided December 16, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage of $2,500, executed by defendant Flanagan and wife to one Jacob Hollwegs, and by the latter assigned to plaintiff. The defense was usury.

The court found, in substance, that in May, 1874, Flanagan applied to plaintiff for a loan of $2,500; that plaintiff told Flanagan " he could not buy a mortgage of him, but to go and make a mortgage to some one else and he would buy

it of them ; " that in pursuance of such direction the mort-
gage and accompanying bond were executed to Hollwegs,
.and delivered to him to be sold to plaintiff at a discount
over and above the legal rate of interest, and were so sold ;
" that the bond and mortgage never had any life or inception
before the assignment thereof to the plaintiff; that they
were not given to the Hollwegs as a security, but only for
the purpose of being sold to the plaintiff." And, as a con-
clusion of law, that they were usurious and void.

The further facts appear in the opinion.

*Abel Crook*, for appellant. The advance made by Holl-
wegs, June 13, 1874, to discharge the sheriff's levy, being
without dispute agreed to be secured by the mortgage,
entitled him to hold the mortgage as security to that amount.
(*James* v. *Johnson*, 6 J. Chy., 429; *Davis* v. *Rogers*, 15
Mass., 389.) Hollwegs had the legal right to assign his
interest, and to that extent Sickles acquired by assignment a
valid title and right to enforce the mortgage. (*Crane* v.
*Price*, 35 N. Y., 494; *Kellogg* v. *Adams*, 39 id., 28.)

*C. H. Roosevelt*, for respondents. Flanagan's affidavit did
not operate as an estoppel, plaintiff having prepared it, and
required him to execute it, knowing it to be false. (*N. Y.
and Oswego R. R. Co.* v. *Van Horn*, 57 N. Y., 476; *Payne* v.
*Burnham*, 62 id., 74; *Dinkenspiel* v. *Franklin*, 7 Hun, 339.)

Danforth, J. A finding of fact without evidence to sup-
port it, if excepted to, presents a question of law, subject to
review in this court. Such is the case before us, and for
that reason I think the plaintiff must succeed on this appeal.

The trial court found that the bond and mortgage never
had any life or inception before they were assigned to the
plaintiff; that they were not given to Hollwegs as a security
" but only for the purpose of being sold to the plaintiff." A
careful reading of the testimony leads us to a different con-
clusion, not by reason of the weight or balance of evidence,

but because it is all one way and wholly against the finding. Two witnesses were called for the defendant—Flanagan himself and Hollwegs. Flanagan says : " I had a conversation with Mr. Sickles in the month of May. I told him I wanted to borrow some money. Says he—'You go and make a mortgage to somebody else ; I cannot buy it of you but I can buy it of them, and I will loan you the money.' I told him I wanted $2,500. He asked me who I would make it out to. I said I had a brother. He said had he any property ? I said not much, and says he—'I won't give any money to any one unless—' some responsible person.'" This is the whole of the conversation as given on the direct examination. On being cross-examined he says : " No person was present at the conversation except Sickles and myself ;" and, adding to the former testimony, says : "I told him that I owed some money and wanted some money on the property that he levied on. I don't know whether I told Sickles what property I wanted to give the mortgage on. I did not tell him how long I wanted the money for. I told him I wanted to pay my debts, of course." "It was before the mortgage was signed and before I got the mortgage drawn that this conversation occurred " — now this is all that occurred between the parties before the mortgage was made. It is absolutely contradicted by Sickles and in the most explicit terms. He denies that he had any conversation whatever with Flanagan, yet we must take Flanagan's statement as true, for the question of comparative credibility is not for us to answer. But it establishes no contract,—nothing upon which usury can be predicated, — no loan of money agreed upon, — no security named, — no terms of loan suggested. Neither in conscience nor in law was any agreement made. The most that can be inferred is that the plaintiff was willing to buy a mortgage provided he could buy it at a discount, but certainly even this is not proven. It will be seen, however, that if he then contemplated usury he was, by the very necessities of the plaintiff saved from its commission. The mortgage was in fact made to Jacob Hollwegs. It is dated May

29th, 1874, to secure $2,500, and is payable on the 29th day of May, 1875, according to the conditions of a bond of the same date executed by the defendant Flanagan and Mary, his wife. These papers were drawn by one Pemberton. He testified that in the first place Hollwegs called upon him in reference to their preparation saying, as he testifies: "Mr. Flanagan was indebted to him. * * * That he had a judgment for a portion of the amount and Flanagan was willing to execute a bond and mortgage to secure him among the rest, that is to secure his claim, and I asked him what is the amount and he told me, I think, $2,500." "He asked me when I would draw the mortgage;" a day was named and at the time appointed Hollwegs came again with Flanagan. Both then stated that Flanagan was indebted to Hollwegs in a certain amount, but the sum he had forgotten. He says: "The object was, in giving the mortgage to secure Mr. Hollwegs indebtedness. I don't know as there was much more said about it." "Flanagan said he was owing Hollwegs and wanted to pay him or secure him, and then the mortgage was executed." This evidence is in no respect contradicted, and Flanagan himself testifies, saying: "After the mortgage was made and recorded I gave it to Hollwegs. When I made it I owed Hollwegs money,—I don't exactly know how much. I remember after I gave the mortgage to Hollwegs the sheriff levied on my stock. Hollwegs paid money to me about that time and I paid it to the sheriff. That was after this mortgage was made and before Sickles bought the mortgage. The levy was paid by Hollwegs giving me the money for that purpose before Sickles gave the money to Hollwegs." Hollwegs says: "At the time the mortgage was made there was due to me about $900, without the interest. I sued Flanagan and got a judgment, and I urged him to get the money and pay me, and he said he would try and do so. That was before the mortgage. When it was given he said Sickles offered to loan him money; that he would not give it to him, and he would give it to another party, and if I would take it I

might take my claim out. The mortgage was to secure my claim, and the balance that might be realized upon the sale was to come back to him. I took it partly as security to that extent, and for the balance above my debt, that I would receive upon the mortgage, to give it back to him. I first refused to advance any money on it, but I found Mr. Flanagan so hard pressed that the sheriff was coming down Monday to make a levy. This was on Saturday, and it would be necessary for him to have that money or the sheriff would sell his cattle ; it was absolutely necessary for him to have it, and he said, the mortgage is large enough and you are amply secured, and let me have it, and in that light I gave him a check for the amount to the order of Ziba Carpenter, and I advanced it because he told me so. It was understood between us that it was to be upon the mortgage. I can't give the words, but I can the result of it. I was secured by the mortgage." The witness says he had judgments at the time which were a " lien against Mr. Flanagan and his property ; " that Flanagan wanted to raise money to pay off these claims and others which were against him. Ziba Carpenter was the sheriff, and the money was advanced by Hollwegs to enable Flanagan to rid himself of the levy of $320, and Hollwegs says : " this was advanced on that mortgage June, 1874." Hollwegs had then two judgments against Flanagan, and these, with interest, and the sum advanced to the sheriff, made, on the 7th of August, 1874, $1,267.51. This was the date of the sale and assignment of the mortgage to the plaintiff, and from the evidence thus referred to, standing uncontradicted, there can be no doubt that at this time the mortgage was a valid and available security in the hands of Hollwegs for the amount due to him. The mortgage was made to sell; the object was to raise money to pay debts, and if the creditors had been less pressing, the sheriff more lenient and Hollwegs less careful of himself and his own interest, it is easy to see that the mortgage would have been disposed of to the plaintiff or some other person under circumstances which would bring the transac-

tion within the condemnation of the statute relating to usury. Not necessarily to Sickles, for the evidence of these three witnesses is that the mortgage was offered for sale to other parties before it was purchased by the plaintiff. As it is, the defense of usury is not made out, but only as to part of the sum covered by the condition of the bond and mortgage, a failure or want of consideration. As to the amount actually due Hollwegs from Flanagan, the plaintiff stands in the place of Hollwegs, and to that extent may enforce the collection of the mortgage. And this is so notwithstanding Flanagan participated in the negotiation which led to the sale, for the rights of Hollwegs were not thereby diverted or impaired either in his hands or in the hands of his assignee, nor could they be by any act of Flanagan short of payment. To the extent of Hollwegs' claim the mortgage was valid and whatever may have been the terms of purchase by the plaintiff, or his expectation concerning it prior to the execution of the mortgage, it would not render it invalid. If no purchaser had been found can it be doubted that Hollwegs might himself have enforced payment of his claim by a foreclosure of the mortgage? I think not. If, failing to negotiate the bond and mortgage Flanagan had demanded them back from Hollwegs and asked for a cancellation of the securities, Hollwegs might still have retained them until his claim was paid. He had, therefore, with or without the consent of Flanagan, a right to assign them; having done so, the assignee is entitled to the same remedy, and if necessary will be deemed subrogated to all his rights. Whether the plaintiff can recover more than the amount due Hollwegs it is not necessary to inquire. That will depend upon the evidence produced upon another trial. If these views are correct, the trial court erred in the finding above referred to, and for that reason the judgment of the Special and General Terms should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.