THE METROPOLITAN NATIONAL BANK OF THE CITY OF NEW YORK, Respondent, *v.* WILLIAM ·B. SIRRET, Impleaded, etc., Appellant.

Upon a motion for a new trial on exceptions ordered, to be heard in the first instance at General Term, all controverted questions of fact are to be regarded as settled by the verdict, and neither the General Term nor this court may consider the weight of evidence or set aside the verdict on the facts, unless there is such an absence of evidence to support a material finding that the court can determine as matter of law that the fact was not proved.

The Limited Partnership Act (1 R. S. 763, § 1 *et seq.*) does not prohibit a limited partnership from buying goods for its business from the special partner; nor are such purchases, if fairly conducted, inconsistent with the purpose or objects of such a partnership.

There is nothing in the spirit or policy of said act to prevent the change of an existing partnership into a limited one.

While, therefore, a special partner, who is a member of a firm engaged in carrying on the same business intended to be conducted by the limited partnership, may not put in his stock in the old concern upon a valuation, as his contribution to the capital in the new firm, if he has paid in his share in cash, the new firm is not prohibited from purchasing in good faith the stock of the old firm, or from paying for it out of the capital so contributed, although it may happen that the special partner is entitled to receive the whole of the purchase-money, and so is placed substantially in the same position as if originally he had put in the stock as capital instead of money. And this is so, although there was an expectation on the part of the special partner and the other members of the old firm, at the time of the formation of the limited partnership, that it should purchase with the money so contributed the stock of the old firm.

*It seems,* that if, antecedent to the payment by the special partner of his contribution of capital to the limited partnership, there had been an agreement by which said partnership obligated itself to purchase the stock of the old firm and pay for it out of the money so paid in, the payment could not be upheld as a payment in good faith, in cash; as the agreement would practically deprive the general partners of the control of the money by appropriating it in advance.

In an action brought by a creditor of a limited partnership in which it was sought to hold S., the special partner, liable for the debt, it appeared that S. was, at the time of the organization of the special partnership, a member of a firm carrying on the same business; that S. sold the stock of the old firm, of which he was practically the owner, to a third person, loaning him the money to pay therefor. The new firm purchased the stock of such third person, paying him out of the capital contributed by

the special partner the same price paid by him. It appeared also that the stock was needed by the new firm, and that the price paid was reasonable. *Held*, that the facts justified the submission of the question of good faith to the jury ; and that, they having found that the transaction was in good faith, S. was not liable.

Upon the trial plaintiff moved that defendant be compelled to produce a book kept by him as county treasurer, offering to show, in substance, that the money advanced by S. to the purchaser to enable him to pay for the stock was drawn from funds in his hands as county treasurer. *Held*, that this was immaterial, and the motion was properly denied.

A provision in the certificate, filed for the purpose of the organization of the limited partnership, authorized the special partner to draw the interest on his capital monthly. *Held*, that this was not a violation of the provision of said act (§ 15), which permits the special partner "*annually*" to receive lawful interest. The word "annually," as used in that provision, means simply" by the year," and the payment may be made of proportionate parts of the annual interest at stated periods less than a year.

The partnership articles contained a provision that the special partner should bear a proportionate share of the losses. *Held*, that this was not violative of said act ; that there is nothing therein prohibiting the general partner from extending his liability by agreement with his partners, or assuming risks beyond the loss of capital.

An omission to state, in the notice published, all the details of the partnership is not a failure to comply with the provision of said act (§ 9), requiring publication of the terms of the partnership, if the publication contains all the facts required by the act (§ 4) to constitute the partnership ; said provision is satisfied by a publication of the terms of the certificate. The name of one of the newspapers in which notice was directed to be published was changed after publication was commenced. *Held*, that this did not affect the validity of the publication ; that the identity of the paper was not lost by the change of name.

(Argued October 27, 1884 ; decided November 25, 1884.)

Appeal from order of the General Term of the Supreme Court, in the fourth judicial department, made the second Tuesday of June, 1882, which sustained exceptions taken by plaintiff on trial, set aside a verdict in favor of defendant William B. Sirret, and directed a new trial.

This action was brought upon a promissory note, executed by the firm of Sirret & Stafford, which firm, the complaint alleged, was composed of defendants.

Said defendant William B. Sirret, who alone appeared and answered, set up in his answer that the firm was a limited partnership, organized under and in pursuance of the statute, and that he was a special partner only.

The facts, so far as material, are stated in the opinion.

*Norris Morey* for appellant. As this case comes up on exceptions ordered to be heard at General Term, in the first instance, only questions of law could be considered or decided by the General Term. (*Hodkins* v. *Hodge*, 38 Barb. 117; *Dickinson* v. *Wasson*, 48 id. 412; *Morange* v. *Morris*, 20 How. 263; *Price* v. *Keys*, 1 Hun, 117; *Lake* v. *Artisans' Bank*, 3 Keyes, 776–7.) Slight evidence is sufficient to support a verdict. If there is sufficient evidence for the jury to deliberate upon, the question of fact must be submitted to the jury. (*Lubar* v. *Koplin*, 4 N. Y. 547; *Morrison* v. *Erie Ry. Co.*, 56 id. 302; *Wilds* v. *H. R. R. R. Co.*, 29 id. 315, 327; *Dey* v. *N. Y. C. R. R. Co.*, 34 id. 9; *Painton* v. *Northern Central Ry. Co.*, 83 id. 8.) It is the province of the jury not only to pass upon conflicting evidence, but when different inferences may be drawn from evidence, or the conduct of parties, to draw the inferences. (*Powell* v. *Powell*, 71 N. Y. 71; *Hart* v. *H. R. Bridge Co.*, 80 id. 622; *Justice* v. *Lang*, 52 id. 323.) The special partner having paid cash contributions before the certificate and affidavit were filed, the special partnership came into being, because the requirements of the statute had been fully complied with. (*Whitman* v. *Van Ingen*, 62 N. Y. 520; *Hardman* v. *Bowen*, 39 id. 196–200.) The court cannot imply terms into the statute for the purpose of extending or imposing a penalty. (*Bonnell* v. *Griswold*, 80 N. Y. 128, 135–8; *Guggenheimer* v. *Geiszler*, 81 id. 293.) A special partnership is essentially a contract for a partnership of labor and capital. (Levi on Mercantile Law, 215.) When the $40,000 was paid by the special partner to the general partners, and expended by them in the purchase at its fair value of property required for beginning and carrying on the business for which the new firm was organized, the

law was fully complied with, and the special partnership legally formed. (*Whitman* v. *Van Ingen*, 62 N. Y. 513; *Lawrence* v. *Merrifield*, 10 J. & S. 36; affirmed, 73 N. Y. 590.) A special partner may deal and tradè on his own private account with his copartners as a firm in the samè way he could with any other firm or individual. (Troubat on Limited Partnerships, § 307; 44 Penn. St. 156–167.) After a special partnership has obtained a legal existence a special partner will not be made liable as a general partner, except for a knowing and intentional infraction of the provisions of law. (*Van Ingen* v. *Whitman*, 62 N. Y. 513, 521–3; *Durant* v. *Abendroth*, 69 id. 148; *Haviland* v. *Chace*, 39 Barb. 283, 288; *Bell* v. *Merrifield*, 28 Hun, 219, 222.) Publication of notice was sufficient although the name of one of the newspapers which has been designated was changed after the publication had been begun. (*Riper* v. *Poppenhausen*, 43 N. Y. 73; *Brown* v. *Argall*, 24 Wend. 496; *Madison Co. Bank* v. *Gould*, 5 Hill, 309; *Levy* v. *Locke*, 47 How. 394; *Singer* v. *Kelly*, 8 Wright [Penn.], 145.) There was no error in the ruling of the trial court declining to make an order that defendant, W. B. Sirret, should produce a cash-book. (*Mathews* v. *Mayberg*, 63 N. Y. 656; *Ross* v. *Harden*, 42 N. Y. Supr. Ct. 427.) Only exceptions can be sent to the General Term in the first instance. (Code of Civ. Pro., § 1000.) An exception can only be taken to a question of law. (Id., § 992.) Questions of fact arising upon conflicting evidence can only be brought up by a motion for a new trial made at Special Term (Code, § 1002), and cannot be brought to this court. (Code of Civ. Pro., § 1337; *Wright* v. *Hunter*, 46 N. Y. 409; *Harris* v. *Burdette*, 73 id. 136; *Wilds* v. *H. R. R. R. Co.*, 24 id. 433.)

*Wm. B. Hornblower* for respondent. The provision of the statute requiring a special partner's capital to be paid in in cash is to be strictly construed, and payment in goods is in no sense a compliance with the statute. (*Haviland* v. *Chase*, 39 Barb. 283; *Van Ingen* v. *Whitman*, 62 N. Y. 513, 520; *In re Merrill*, 12 Blatchf. 221–223; *Durant* v. *Abendroth*,

69 N. Y. 148; affirming, 9 J. & S. 53; *Pierce* v. *Brant*, 5 Allen, 91; *Haggerty* v. *Foster*, 103 Mass. 17; *Vandike* v. *Rosskars*, 67 Penn. St. 330; *Maginn* v. *Lawrence*, 13 J. & S. 235.) It is the judge's duty to direct a verdict where a verdict the other way would be clearly against the weight of evidence. (*Wilds* v. *Hudson R. R. R. Co.*, 24 N. Y. 430; *Moore* v. *Westervelt*, 1 Bosw. 357; *Porter* v. *Havens*, 37 Barb. 343; *Grain* v. *Bank of Commonwealth*, 6 Duer, 76; *Fish* v. *Davis*, 62 Barb. 122; *Sexton* v. *Zett*, 44 N. Y. 430; *R. R. Co.* v. *Stout*, 17 Wall. 663; *Montclair* v. *Danna*, 107 U. S. 162; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 19 N. Y. W. Dig. 230.) A party who seasonably makes a request to charge containing a sound principle of law is entitled to have it announced to the jury without any qualification tending to render it uncertain, or tending to confuse the jury, or he is entitled to have it distinctly refused. (*Wilds* v. *Hudson R. R. R. Co.*, 24 N. Y. 430; *Warner* v. *N. Y. C. R. R. Co.*, 44 id. 470; *Meyer* v. *Clark*, 45 id. 285; *Roe* v. *State*, 16 Vroom, 49; 28 Alb. L. J. 298; *Chapman* v. *McCormick*, 86 N. Y. 479.) Nor does a judge cure the error of a qualified charge by a general statement at the end, unless it is clear that the jury were not misled by the charge taken as a whole. (*Owen* v. *H. R. R. R. Co.*, 35 N. Y. 519.) The trial court erred in not requiring the defendant W. B. Sirret to obey the subpoena *duces tecum* requiring him to produce his county treasurer's books. (*Ex parte Kingston*, L. R., 6 Ch. App. 632; *Pennell* v. *Diffell*, 4 De G., M. & G. 372; *Hooley* v. *Gieve*, 9 Daly, 104; *Knatchbull* v. *Hallett*, L. R., 13 Ch. Div. 696; *Van Allen* v. *Am. Nat. Bk.*, 52 N. Y. 1; *Nat. Bk.* v. *Ins. Co.*, 104 U. S. 54.) An objection not taken on the trial, and which could have been obviated if taken by further proof, cannot be first raised on appeal either to sustain the decision of the trial court or to reverse it. (*Dunn* v. *Durant*, 9 Daly, 389; *Tappen* v. *Butler*, 7 Bosw. 484; *Pollen* v. *Le Roy*, 10 id. 56; *Kirby* v. *Sisson*, 2 Wend. 550; *City Nat. Bk. of Poughkeepsie* v. *Phelps*, 86 N. Y. 484; *Mead* v. *Shea*, 92 id. 122, 127.)

ANDREWS, J.   The only questions before the General Term were questions of law arising upon exceptions taken by the plaintiff on the trial before the jury. The trial judge upon the application of the plaintiff's counsel, made after verdict, directed that the exceptions of the plaintiff should be heard in the first instance at General Term, and that in the meantime judgment should be suspended.   Upon a motion for a new trial upon exceptions ordered to be heard in the first instance at General Term, all controverted questions of fact are to be regarded as settled by the verdict of the jury, and neither the General Term, nor this court, will consider the weight of evidence, or set aside the verdict on the facts, unless indeed there was such an absence of evidence to support a material finding, that the court can determine as matter of law that the fact found was unproved, in which case an exception by the party against whom the verdict was directed, to the refusal of the court to direct a verdict in his favor, would be well taken.

Among the controverted questions of fact which were settled by the verdict was that relating to the day on which the firm of Sirret & Stafford deposited to their credit in the Third National Bank of Buffalo, the check of William B. Sirret for $40,000, given to the firm for his contribution of capital to the special partnership.   If the check was deposited December 28, 1875, the day on which the affidavit of Stafford, the general partner, was made, and the payment was otherwise valid and effectual, then the partnership so far as the contribution of capital was concerned, was regularly constituted. The account of William B. Sirret at the bank was good for the check.   The check was drawn, dated and delivered to Sirret & Stafford on the 28th.   The only controversy at the trial on this branch of the case was whether the check was actually deposited by Sirret & Stafford in the bank on which it was drawn, and was credited by the bank to their account, on the 28th as claimed by the defendant, or on the 29th as claimed by the plaintiff. The question was submitted to the jury. The evidence did not conclusively establish either claim, and

whatever we may think as to the weight or preponderance of evidence, the finding of the jury is conclusive.

The main point of controversy on the merits, grew out of the circumstances attending the transfer of the stock of goods of William B. Sirret & Co. to Horace Stillman on the 28th of December, 1875, for the sum of $33,164.08, and the purchase by Sirret & Stafford from Stillman of the same stock for the same price on the 30th of December, two days after the original sale. It was claimed by the plaintiff on the trial, and the claim is strenuously urged in this court, that assuming that William B. Sirret delivered to Sirret & Stafford $40,000 in cash on the 28th of December, 1875, as a compliance in form with the requirement of the Limited Partnership Act that the contribution of the special partner to the capital of the limited partnership " shall be paid in cash," nevertheless the alleged payment in this case was a mere pretense and was resorted to as a cover or device to evade the statute, and that in fact and law the transaction proved, was a putting in by William B. Sirret of the stock of the previous firm of William B. Sirret & Co. as his contribution as special partner to the extent of $33,164.08, to the capital of Sirret & Stafford. The question was submitted by the trial judge to the jury, and in a variety of forms he instructed them that if the transaction disclosed by the evidence was a mere contrivance to evade the statute and to enable William B. Sirret to put in the goods instead of cash, as capital, then the legal effect was the same as though William B. Sirret had put in the goods directly, and as if no check had been given. The jury found for the defendant upon this issue also, and unless the uncontroverted facts establish as matter of law that the transaction was an evasion and violation of the statute, their finding cannot be disturbed.

It is well settled that under the Limited Partnership Act the contribution of capital by the special partner must be made in cash, and that payment in any thing else will not satisfy its requirements. (*Van Ingen* v. *Whitman*, 62 N. Y. 513; *Durant* v. *Abendroth*, 69 id. 148.) In this case there was a formal com-

pliance with the act. William B. Sirret, the special partner, as the jury have found, did pay to Sirret & Stafford on the 28th of December, $40,000 by his check which represented money and which the firm converted into money before the making of the affidavit by the general partner on that day. On the 30th of December, $33,164.08 of this money was applied by Sirret & Stafford in the purchase from Stillman of the stock of goods originally belonging to William B. Sirret & Co., which stock William B. Sirret, acting for William B. Sirret & Co. had sold to Stillman for the same sum. It is undoubtedly true that it was the expectation of William B. Sirret and of the other members of the firm of William B. Sirret & Co., before the actual organization of the firm of Sirret & Stafford, that the latter firm on being organized would purchase the stock of the former firm for the use of the new firm, and pay for the same out of the money which should be contributed by William B. Sirret under the limited partnership agreement as his capital in the new firm, and further that the sale to Stillman, and from Stillman to the new firm was then contemplated. We are of opinion, however, that the question of intent and good faith was properly submitted to the jury, and that the transaction as disclosed by the evidence could not as matter of law be adjudged a fraud upon the statute.

The jury must be deemed to have found, as they were justified in finding, upon the evidence, that William B. Sirret in organizing the limited partnership firm, was actuated by honest and justifiable motives, and that it was not organized to escape his liability as partner in the firm of William B. Sirret & Co., by saddling the debts of that concern upon the new firm. In organizing the new firm, which was to conduct the same business as the former one, William B. Sirret was necessarily confronted by the question of the disposition to be made of the stock of the firm of William B. Sirret & Co., of which, practically, he was the sole owner. The jury have found that the stock was needed by the new firm in its business, and that the price paid, was fair and reasonable. There is nothing in the Limited Partnership Act which pro-

hibits a limited partnership from dealing with or buying goods for its business from the special partner.   Transactions between the firm and the special partner may be fraudulent in fact as to the creditors of the firm.    But there is no disability to engage in such dealings, imposed by the terms of the act, nor are such dealings, fairly conducted, inconsistent with the purposes or objects of a limited partnership.    That such dealing is permitted has been decided by the Supreme Court of Pennsylvania, under a statute almost identical with our own, and the same principle is recognized in the French law, from which the principle of limited partnership is derived.   (*McKnight* v. *Ratcliff*, 44 Penn. St. 156 ; Troubat on Limited Partnership, § 307.)

It is easy to conceive of cases where the acquisition by the firm of a property right or interest belonging to the special partner might be in the highest degree to the advantage of the firm, or even essential to the successful prosecution of its business. There would therefore have been no legal objection to a purchase by Sirret & Stafford from William B. Sirret of this stock of goods, if it had not been preceded by an expectation or understanding existing when the firm was organized, that such purchase would be made.   It may be that if, antecedent to the payment of the $40,000 by William B. Sirret to Sirret & Stafford, there was an agreement by which Sirret & Stafford had obligated themselves to purchase this stock of goods, and pay for it out of the fund contributed by William B. Sirret, the payment could not be upheld as a payment by the special partner of his capital, in good faith in cash, under the statute. It would be a payment connected with an antecedent agreement restricting the liberty of the general partners in the use of the money, and practically appropriating it in advance.  But the evidence fails to establish that there was any agreement binding upon Sirret & Stafford to purchase the stock or which deprived the firm of the legal liberty to disregard and repudiate any prior understanding with reference to the purchase, or which prevented it from using the money received from William B. Sirret, in the firm business in any manner it

should see fit. It is true Sirret & Stafford met the expectation of the parties and bought the stock, and thereby William B. Sirret was enabled to receive $33,164.08 of the money paid into the firm. He did not receive it, however, as a return of his capital paid in. The transaction on his part was not in form or in legal effect the same as though he had put in the goods as part of his capital, instead of the money. The money when paid was put beyond his control and placed in the legal possession of the general partners, and was subject to any disposition they might make of it. The purchase in effect was a transaction of the firm after it had been organized, and not the consummation of a prior contract, or at least the jury were at liberty so to find.

There is nothing in the letter or policy of the Limited Partnership Act to prevent the change of an existing general partnership into a limited one. The practical convenience of such a proceeding, in many cases, is manifest. It enables a general partner who, by reason of age or infirmity, or upon any other ground, desires to withdraw from the active management of the business, to place it in the hands of his copartners, risking only his capital, and at the same time securing to the new concern the good will and business advantages possessed by the former one. The practical arrangements by which such a change is effected usually include the taking by the limited partnership of the assets of the general partnership. The special partner cannot put in his stock in the old concern upon a valuation, as his capital, because the statute requires it to be paid in in cash. But the statute does not prohibit the limited partnership from purchasing in good faith of the former firm, or from paying for it out of capital contributed by the special partner, although it may happen that the latter is enabled to receive the greater part, or the whole of the purchase-money, and is placed in substantially the same position as if he originally had put in the stock as capital instead of money. The transaction is not a withdrawing of the capital of the special partner. It is the employment of that capital in the business

of the limited partnership. If the purchase of the stock was made a condition of his contribution of capital, a different question would be presented. But where a limited partnership is at liberty to purchase the stock, or to use the fund for any other partnership purpose, bad faith in constituting the partnership is not a legal inference from such a transaction, and this, although the expectation that the new firm would make the purchase, existed when the partnership was formed. The case of *Lawrence* v. *Merrifield*, decided in the New York Superior Court and reported in 10 Jones & Spencer, 36, and affirmed in this court (73 N. Y. 590), tends to support the conclusion we have reached upon this branch of the case.

The exception to the denial of the plaintiff's motion to compel the defendant, William B. Sirret, to produce the books kept by him as county treasurer, is not available for the reason that it was wholly immaterial to the issue, whether the money loaned by William B. Sirret to Stillman to pay for the stock of goods, was or was not advanced out of the funds received by Sirret as county treasurer. The county of Erie makes no ˙complaint of the misuse of its funds. The pecuniary responsibility and solvency of William B. Sirret at the time of this transaction was assumed on the trial. The loan was made by means of a check upon his general account, and if that account was made up of county funds, it was made good for the amount withdrawn on the 28th of December, by a deposit of the same amount to the credit of the account on the 30th of the same month. Whether William B. Sirret borrowed the money to loan to Stillman, from a friend, or took it · temporarily from the funds of the county, was not we think a material circumstance bearing upon the question whether the $40,000 paid to Sirret & Stafford was in fact paid, or was paid in good faith.

The plaintiff's counsel at the conclusion of the evidence, moved the court to direct a verdict for the plaintiff on several grounds not involved in the foregoing discussion.

*First.* The objection that the provision in the certificate filed on the 28th of December, 1875, permitting the special

partner to draw the interest on his capital monthly, was a violation of the provision in the fifteenth section of the Limited Partnership Act, which permits the special partner *annually* to receive lawful interest on his capital, under the circumstances stated in that section, is not we think well taken.   The stipulation in the partnership articles (which were filed as the certificate) for periodical payments of a proportionate part of the annual interest, fairly construed, relates to interest earned at the time such payments are provided to be made, and is not a violation of the statute.   The word "annually" in the fifteenth section has we think the same meaning as "*per annum*," or "by the year," and like the statute of usury this section is not violated by a provision that the annual interest may be paid quarter yearly, or at other stated periods less than a year.

*Second.* The provision in the partnership articles that the special partner should bear a proportion of the losses was in the interest of creditors, and there is nothing in the act prohibiting the special partner from extending his liability by agreement with the general partners, or assuming risks beyond the loss of his capital.

*Third.* The certificate filed on the renewal of the partnership December 5, 1877, stated all the facts required to be stated by the fourth section of the act.   The notice published was a copy of this certificate.   The ninth section requiring publication of the terms of the partnership is satisfied we think by a publication of the certificate, and an omission to state in the published notice all the details of the partnership agreement, is not a failure to comply with the provision as to publication, so long as the notice contains all the facts required by the fourth section.   (Troubat on Limited Partnership, § 84.)

*Fourth.* The change in the name of "The Buffalo Daily Dispatch and Evening Post," one of the newspapers in which the notice was directed to be published, to that of "The Buffalo Evening Post," made after the publication was commenced, did not we think affect the validity of the publication.   The identity of the paper was not lost by a change of name merely,

and the purpose of the statute was accomplished by continuing the publication in that paper under the changed name.

*Fifth.* The court would not have been authorized to direct a verdict on the ground that when the certificate and affidavit for the renewal of the partnership were made and filed, the capital of William B. Sirret, the special partner, had been impaired. There was not only no conclusive evidence of the fact, but we are unable to find any evidence which affords ground for any thing more than a conjecture that such a fact existed. But, however this may be, the question could not be ruled as one of law.

The plaintiff's counsel made requests to charge, which he claims were disposed of by the trial judge to his prejudice. There is, we think, no exception which brings up the questions raised by these requests, or the disposition made of them by the court. It is, therefore, unnecessary to consider whether there was any error committed in regard to them.

There are some other questions raised by exception, not specifically considered in this opinion. We have examined them and are of opinion that none of them are well taken. We are of opinion that no legal error was committed on the trial, and that the order of the General Term, granting a new trial, should be reversed, and judgment directed for the defendant on the verdict.

All concur.

Order reversed and judgment accordingly.