### Toms *v.* Greenwood et al.

*(Superior Court of Buffalo, General Term. April 10, 1890.)*

1. **Motion for New Trial on Exceptions—Questions Involved.**
   A motion for a new trial after entry of an interlocutory judgment on exceptions, pursuant to Code Civil Proc. § 1001, brings up only the questions at law presented by the exceptions taken to the findings of the court and its refusals to find.

2. **Action to Set Aside Deed—Undue Influence.**
   While the mere relation of parent and child is not sufficient to create a presumption of fraud or undue influence, so as to avoid a transfer of property, or shift the burden of proof that the transaction was fair and equitable upon the beneficiary, yet if the circumstances show that the beneficiary has reaped an undue advantage, or that the capacity of the grantor is such that the parties did not deal on terms of equality, then the transaction is presumed fraudulent, unless it be affirmatively established that the stronger party practiced no deception and used no undue influence.

Motion for a new trial on exceptions.

Action by Joseph Toms against Henry Greenwood and others. There was an interlocutory judgment for plaintiff, and defendant Greenwood moves for a new trial.

Argued before BECKWITH, C. J., and HATCH, J.

*Simon Fleischmann*, for defendant Greenwood. *Worthington C. Miner*, for plaintiff. *Frank C. Ferguson*, guardian *ad litem*, for infant defendants.

HATCH, J. There was no appeal by the defendant from the interlocutory judgment entered in this action. The matter, therefore, comes to this court upon the motion for a new trial alone. This practice is authorized by section 1001, Code Civil Proc., which provides that a motion may be made for a new trial upon one or more exceptions after the entry of the interlocutory judg-

ment, and before the commencement of the hearing directed therein, such motion to be heard at the general term. Préliminary question is made as to what is thus brought up for review. It is claimed by defendant that the whole record and evidence is open to examination by the appellate court, and that the question for consideration is whether, upon the whole case, injustice has been done to the appellant. We do not think the rule as broad as this. It was said by Judge EARL in *Raynor* v. *Raynor*, 94 N. Y. 252: "There is this difference between an appeal from an interlocutory judgment and a motion for a new trial, under section 1001. The motion must be based upon one or more exceptions, and hence can present only questions of law. The appeal brings to the general term for review both questions of law and fact. Hence the appeal always brings up the same questions which can be presented upon the motion, but the motion does not always present the same questions which can be argued upon the appeal." This clear statement leaves no question but that the court upon this review is limited to the questions of law presented by the exceptions taken to the findings of the court and its refusals to find.

The action is brought to vacate and set aside certain deeds, one executed by Charlotte Toms, wife of the plaintiff, deceased, in her life-time, to the defendant Greenwood, and by him to the defendant King, alleged to be in fraud of the rights of plaintiff and of the infant defendants. The court has found that the first of said deeds was procured by the fraud, undue and improper influence, of the defendant Greenwood, exercised upon the said Charlotte Toms, and that by reason thereof the same was void, and it thereupon directed judgment for its cancellation. Defendant Greenwood contends that this finding of fact is without evidence sufficient to support it; the exception taken raises this point, and thus presents a question of law for our consideration. *Sickles* v. *Flanagan*, 79 N. Y. 224; *Bank* v. *Sirret*, 97 N. Y. 320. The court in examining this question is not restricted to a consideration of whether there is no evidence to support the finding, but whether there is such an absence of evidence as that the court can say, as matter of law, the fact found was unproved. *Hall* v. *Stevens*, 116 N. Y. 201, 22 N. E. Rep. 374. An examination of the evidence is therefore required. Charlotte Toms was the daughter of the defendant Greenwood. She was married to the plaintiff in 1880, when an infant, between 18 and 20 years of age. The same year of the marriage Greenwood began living with them, and so continued to the death of the wife, which occurred in October, 1886, and thereafter continued to reside in the house with the plaintiff until March 10, 1889, when, a difficulty arising, he left the house, and on the next day, while out of possession, deeded the premises to the defendant King, without her knowledge, the consideration recited therein being one dollar. Four children were born of the marriage, two of which survive, aged, respectively, eight and three years. About September, 1880, Greenwood and Toms negotiated and finally consummated an arrangement with Mr. Box for the purchase of a lot and the erection of a house at the agreed price of $750; $100 being paid down, and the balance secured by bond and mortgage. The premises were deeded to Charlotte Toms, and the object of the purchase by all the parties was to provide a home for the family of Toms. It is conceded that both Toms and Greenwood made payments upon the house, part in principal upon the mortgage, and also for repairs, water-bills, taxes, and improvements, continuing from the date of the purchase to the time when Greenwood left, and that Toms and his family, with Greenwood, continuously resided therein. The evidence is quite conflicting as to the extent of the payments made by Toms and Greenwood. The former claims to have paid in all about the sum of $434 upon the purchase price, and in repairs about the sum of $149, while Greenwood claims to have paid upon the purchase all that was paid, with the exception of $100, and for all the repairs, except some insignificant sums. Both parties are cor-

ruborated in their several claims by the testimony of witnesses and by circumstances.    It seems plain that, so far as this question bears upon the main issue in the case, the conclusion of the court in plaintiff's favor is not without sufficient evidence to sustain it.

On the 19th day of March, 1885, Charlotte Toms executed and delivered to Greenwood a deed of these premises, subject to the Box mortgage.    The consideration expressed in the deed was $750, but at no time was any consideration paid by Greenwood to the grantor therein for the conveyance; the consideration he claims will be hereafter noticed.    Toms was not present when the deed was executed, and he claims that he knew nothing of it until the difficulty arose which resulted in Greenwood's leaving the house.    Upon this point Toms was contradicted by Greenwood, who testified that the talk was had the night prior to the execution of the deed, and at other times, and that Toms requested the transfer of the title to be made, and when done the deed was immediately recorded, Toms informed of it, and he expressed his satisfaction with it.    Two witnesses, daughters of the defendant King, testified to conversations between Toms and his wife in which the transfer was mentioned before and after the deed was executed.    Plaintiff also produced a witness, Odell, who testifies that in April, 1889, Toms sent for him and negotiated about building an addition upon the house; the addition which witness thought should be built Toms thought he could not afford; and thereupon Greenwood stated that he had some money, and might as well put it into the house to help Toms, as he had had bad luck in losing his wife and children; and thereupon Odell made a contract with Greenwood to build an addition. Subsequently Toms employed Odell to paint the house, and do some inside work, for which he paid him.    During all this period Greenwood had lived in the family.    He paid no board, but paid some grocery bills, at one time about $100, which is the only one specified in amount, and some other expenses connected with the house.    This covered a period of about nine years, as it does not appear that any change was made after Mrs. Toms' death.    One reason assigned by Greenwood for the execution of the deed is that Toms and wife were much in debt to him.    This must fail as a reason, unless the payments made upon the house are to be treated as having been made by Greenwood, as claimed by him, for the statement is much too general, of payments made for the support of Toms' family, upon which to predicate a liability equal in amount to the value of the property at the time of the transfer, or approximating such sum, as the only specific item is the $100 grocery bill; but the case is void of proof to show that Mrs. Toms was indebted to any one beyond the sum of about $20, as Greenwood does not claim that he paid any bills upon her credit.    The testimony is general that they were indebted, but such proof is insufficient to establish the debt against Mrs. Toms, even though it be conceded that she was liable for purchases made by her.    As to the advances made by Greenwood for the purchase of the house, assuming them made as he states, it did not create a debt against Mrs. Toms..    On the contrary, the whole evidence shows, and it is conceded as well, that Greenwood was actuated by but one motive, and that was to provide a home for Mrs. Toms and her family.    The act is consistent with the existing relation, and Mrs. Toms held the title free and clear of any legal obligation in favor of Greenwood or any one else.    There was no agreement for future advances of money to be expended for the benefit of Mrs. Toms or family, or for improving the property, and in fact nothing was expended, of any amount, until about four years after the death of Mrs. Toms.    It was therefore competent to find that the transfer was made without consideration.    But the main reason assigned by Greenwood to support the conveyance is the desire of Mr. and Mrs. Toms to remove the property beyond the reach of creditors.    It has already been noted that there were no debts against Mrs. Toms that could at the time have been made a lien upon the property, if placed in judgment.    It may have been that

she believed that, for the debts then existing against Toms and herself, the property might be taken, and if Greenwood knew otherwise, and she was induced to thus part with the title to him, then, clearly, it was a fraud upon her rights, and she was subjected to such improper influences as would avoid the deed. If she was induced to do it by the statement of Toms, combined with that of Greenwood, a like result would follow. Toms states that he knew the property was not liable for his debts, and denies that he ever made the statement, and, in addition, that he was not at that time threatened with any suit, nor was his wife, and that in fact no judgment has ever been obtained against him or his wife in her life-time. This condition furnishes quite a strong circumstance to show that the motive for the execution of the deed did not exist, and furnishes ground for the disbelief of Greenwood in that respect. Other circumstances exist which are to be noticed in this connection. It is true that Toms' knowledge of the execution of the deed or want of it, standing alone, would not affect the transaction, but, if that was concealed from him, it may be considered as throwing light upon the transaction bearing upon Greenwood's good faith. Toms claims to have known nothing of it, and to that end shows that he continued to improve the property, paying out money thereon. Odell states that when he made the contract with Greenwood his ownership was not disclosed, but, on the contrary, he said he was doing this to help Toms. The fact of Greenwood's going to Hume, who drew the deed, with whom it did not appear the parties had ever dealt, when he was after compelled to go to Box to arrange the other papers; that this was the only piece of property owned by Mrs. Toms, or that had ever been owned by her; and that in thus divesting herself of title she deprived her children of all right therein, while it does not appear that she was aware of the effect of her act, or was informed in respect thereto, and Greenwood was,—are all circumstances bearing upon the good faith of the transaction. Mrs. Toms was but 23 years of age, and presumably unacquainted with her strict legal rights, and those of her children; while it appears that Greenwood was an old man, possessed of some intelligence, and, so far as appears, in full possession of his faculties, and informed to some extent of the legal rights and liabilities of all the parties; to the extent that he was thus informed he possessed the advantage over the daughter. The value of the property at the date of the transfer is not given, but at the date of the transfer to defendant King it was worth from $1,000 to $1,600, and must have been worth very nearly that when first transferred. The mortgage had been reduced to $175, and was the only incumbrance thereon. When Greenwood left the premises he immediately transferred the property by deed to Mrs. King, his step-daughter, without her knowledge, and for a nominal consideration. It further appears that, at the time of the transfer to Greenwood, Mrs. Toms had been sick, and she had previously relied more or less in this matter upon her father. It is true that the testimony tends to show that Mrs. Toms compelled obedience from her father and husband about the house. Such circumstance, if true, is not controlling, for it would not militate against the fact that she could be easily controlled and influenced through her fears of loss of the property by the onslaught of creditors. But little importance might be assigned to any one of the several circumstances herein narrated, standing by itself, but when coupled together, and viewed from the relations of the parties, they become significant, and tend with some certainty to show that Greenwood desired to obtain to himself the benefits which had accrued from the purchase, to the exclusion of Toms and the infant children, without making in return any adequate compensation, and that the moving cause which induced Mrs. Toms to execute the conveyance was the fear of loss from creditors, which as to her did not exist, and which as to Toms are shown not to have been pressing, and were groundless in fact. It is not too much to say that there was evidence susceptible of such construction. Adopting this, it was within the province of the

court to say that the presumption of undue influence in procuring the execution of the deed arose, and that the burden of proof was upon the beneficiary therein to establish that the transaction was free and fair, and that the evidence warranted the conclusion that the presumption was not overcome. The authorities upon this question are not arrayed against this conclusion. It may be conceded, as claimed, that the mere relation of parent and child is not sufficient to create a presumption of fraud or undue influence, so as to avoid a transfer of property, or to shift the burden of proof that the transaction was fair and equitable upon the person benefited; but if such relation be established, and the circumstances proved show that the beneficiary has reaped an undue advantage, or if it appears that the capacity of the person is such that the parties did not deal on terms of equality, then the burden is shifted, and the transaction is presumed fraudulent, unless it be affirmatively established that the stronger party practiced no deception and used no undue influence. *Green* v. *Roworth,* 113 N. Y. 462, 21 N. E. Rep. 165; *Cowee* v. *Cornell,* 75 N. Y. 91; *In re Smith's Will,* 95 N. Y. 516; 2 Pom. Eq. Jur. 951, 962, note 3; Story, Eq. Jur. § 308 *et seq.* The circumstances of this case, already adverted to, bring it within the principle of the foregoing authorities, and we find no such absence of evidence as will enable us to say that the finding is unauthorized. We have examined the other exceptions taken, but do not find substantial error therein. The motion for a new trial should therefore be denied, with costs.