VERITY et al. v. STERNBERGER et al.

(Supreme Court, Appellate Division, First Department. June 7, 1901.)

1. MORTGAGES—INNOCENT PURCHASERS—KNOWLEDGE—PROOF—SUFFICIENCY.
A mortgage was executed for $10,000 to raise $4,000 to satisfy a debt of the mortgagor to R., who directed the mortgagee to negotiate a sale of the mortgage. D. purchased it for $4,000, as agent for his daughter, who assigned a three-fifths interest in it for $3,000. D. required the

mortgagor to execute a certificate that the mortgage was valid, and that he would waive all defenses thereto. *Held*, that the evidence was not sufficient to show that the purchasers knew that the certificate was false, so as to defeat their rights as innocent purchasers.

2. SAME—USURY—DEFENSES—MORTGAGORS—CERTIFICATE—ESTOPPEL.
Where a mortgage was executed for $10,000 in order to raise $4,000, and the mortgagee, on behalf of the mortgagor, negotiated a sale of the mortgage for $4,000, the mortgagor's certificate to the purchaser that the mortgage was valid, and that he would waive all defenses thereto, estopped the mortgagor's heirs from asserting that the mortgage was usurious.

3. SAME—INNOCENT PURCHASER—RIGHTS.
A mortgage was executed without consideration, but sold and assigned by the mortgagee, at the request of the mortgagor, for less than its face value; the proceeds being paid to the mortgagor. *Held*, that it could be enforced only for the amount paid for it.

Appeal from special term, New York county.

Action by Laura Verity and another against Maud M. Sternberger and another for the foreclosure of a mortgage. From a judgment in favor of plaintiffs for $4,000, both parties appeal. Affirmed.

The mortgage, to foreclose which the action is brought, purports to have been given to secure the payment of $10,000. The judgment declares it enforceable only to the extent of $4,000. The plaintiffs appeal upon the ground that the mortgage should have been declared enforceable to the full extent of $10,000, and the defendants, Maud M. and Minnie H. Sternberger, appeal upon the ground that it should have been declared usurious and void.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

James C. De La Mare, for plaintiffs.
Francis Burton Harrison, for defendants.

LAUGHLIN, J. The mortgagor, Clarence S. Sternberger, inherited, subject to his mother's life estate, from his father, an undivided one-eighth interest in four several parcels of land situated in the city of New York, an undivided one-sixteenth interest in another parcel of land situated in said city, and an undivided one-eighth interest in a tract of land situated in New Jersey. The mortgage in question covered the mortgagor's interest in these several tracts of land, upon which there existed a prior mortgage for $9,000 executed by him, and also a second mortgage for $5,000 also executed by Sternberger, upon his undivided interest, to one Ruble, as security for about $3,000 and further advances contemplated to be made in the future. Kraffmiller, the mortgagee, was an employé of the Standard Book Company, in which the mortgagor was the only one interested, and of which there were no officers. At the time of the execution of the mortgage the mortgagor was not indebted to the mortgagee, and the only interest of the latter in the mortgage was to negotiate a sale thereof for the mortgagor. Ruble had made unsuccessful efforts to sell this mortgage, and was pressing Sternberger for payment of the indebtedness secured thereby. The purpose for which Sternberger executed the $10,000 mortgage, evidently, was to negotiate a sale thereof, and with the proceeds to pay the Ruble mortgage and have some cash surplus. Pursuant to the directions of the mortgagor, Kraffmiller took the $10,000

mortgage to Ruble for further directions as to what to do with it.
At this point a conflict arises in the evidence; it being claimed by
Kraffmiller that Ruble directed him to one Etta Forgotston, at 203
Broadway, and Ruble denying this, but giving another explanation
as to how Kraffmiller came to go to this woman. It appears, how-
ever, that Kraffmiller did call upon her, and offered the mortgage
for sale. She declined to purchase it, which apparently surprised
Kraffmiller, who stated that he had been directed to call at that
number, whereupon she suggested that perhaps Mr. De La Mare,
whose office was adjoining, might take the mortgage, as he some-
times dealt in such securities. Here another conflict arises in the
testimony. Kraffmiller says that Miss Forgotston conducted him
to the office of De La Mare, who was not in at that time, and she
subsequently introduced him to De La Mare as the man who had
the Sternberger mortgage. Miss Forgotston testifies that she had
an office boy show Kraffmiller to De La Mare's office, but other-
wise denies any connection with his meeting De La Mare. However,
Kraffmiller finally met De La Mare, and, after recording the mort-
gage at the latter's suggestion, through him negotiated a sale and
assignment thereof to the plaintiff Verity for $4,000. Kraffmiller
represented to De La Mare that he owned the mortgage, was de-
sirous of selling it, and consented to transfer it for this amount.
Before purchasing, De La Mare required an affidavit as to the mort-
gagor's title to and interest in the premises, and an acknowledged
certificate of the mortgagor as to the validity of the mortgage, and
a waiver of any defense that might exist thereto. On the presenta-
tion of these papers, De La Mare drew his personal check to the
order of Kraffmiller for $3,057.23, and directed that the same be
indorsed over to Ruble in payment of the indebtedness secured by
the $5,000 mortgage held by him. This was done, and Ruble de-
posited the check to his own credit in the bank, and discharged
the mortgage. Another personal check was drawn by De La Mare
to the order of Kraffmiller for $898.92, being the balance of the
$4,000; the purchase price of the mortgage, after deducting charges
for drawing and expenses of recording the papers. Kraffmiller sub-
sequently indorsed and delivered the smaller check to Sternberger.
De La Mare in this transaction represented the plaintiff Laura
Verity, who was his daughter, and she took no part therein per-
sonally. The plaintiff Strauss, who resided in Philadelphia, had
previously, by correspondence with De La Mare, consented to pur-
chase a three-fifths interest in the mortgage, and pay therefor $3,000.
Strauss personally had nothing to do with the negotiations for the
purchase of the mortgage, and was not present when the matter
was consummated, but Attorney Sternberger was there represent-
ing him. Four days after the assignment by Kraffmiller to her,
the plaintiff Verity executed an assignment of a three-fifths inter-
est in the mortgage to the plaintiff Strauss, whose check for $3,000
was at that time delivered to her father for her. The defendants
who appeal are the heirs of the mortgagor.

This mortgage had its inception by the assignment from Kraff-
miller, who had no interest therein, to the plaintiff Laura Verity.

Only 40 per cent. of the amount which it was given to secure was actually advanced upon it. This brings the transaction within the prohibition of the usury laws, and would render the mortgage void (Hall v. Earnest, 36 Barb. 585; Payne v. Burnham, 62 N. Y. 69), but for the advance of the $4,000 in good faith. The answer sets up the defense of usury. The plaintiffs contend that defendants are estopped by the certificate and consent of the mortgagor from interposing this defense. There may be an estoppel in pais against the defense of usury as well as against other defenses. Mason v. Anthony, *42 N. Y. 609; Barnett v. Zacharias, 24 Hun, 304, affirmed in 89 N. Y. 637. It is claimed on the other hand that the purchaser did not rely on the mortgagor's certificate of validity, and knew that it was false. If this appeared from the evidence the certificate, doubtless, would be of no avail to the plaintiffs (Eitel v. Bracken, 38 N. Y. Super. Ct. 7); but, as was observed by the learned trial judge, while the transaction is suspicious, the proof falls short of bringing home to the purchasers or their representatives knowledge as to the falsity of the mortgagor's certificate. Suspicion is not proof, and courts must decide cases on evidence. It does not follow, however, that we must permit the enforcement of the security for the entire amount. Full indemnity will be afforded plaintiffs by holding defendants estopped from challenging the validity of the mortgage to the extent of the amount actually advanced upon the faith thereof, together with interest thereon from that date. The trial court rendered judgment upon this basis. This rule has been declared as the judicial policy of our state, by a long line of authorities, and it is now the well-settled law in such cases. Payne v. Burnham, 62 N. Y. 69; Miller v. Zeimer, 111 N. Y. 441, 18 N. E. 716; Sickles v. Flanagan, 79 N. Y. 224; Cross v. Smith, 85 Hun, 49, 32 N. Y. Supp. 671; Rollins v. Barnes, 11 App. Div. 150, 42 N. Y. Supp. 954.

These views lead to an affirmance of the judgment, without costs to either party. All concur.