(86 Misc. Rep. 121)

### SCHANZ v. SOTSCHECK et al.

(Supreme Court, Special Term, New York County. June, 1914.)

**1. Usury (§ 34*)—Purchase of Existing Mortgage.**

The purchase in good faith of an existing mortgage at a discount of 10 per cent. was not violative of the statute against usury.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 83–89; Dec. Dig. § 34.*]

**2. Usury (§ 34*)—Purchase of Mortgage—Loan of Money.**

Where plaintiff told a mortgagor's agent that he would buy a second mortgage, and the agent, under an attorney's instructions, caused a second mortgage to be executed to his stenographer, and by her assigned to plaintiff in consideration of a sum paid to the mortgagor's benefit, such sum being less than the amount of the mortgage, and the stenographer acting as a dummy only, the transaction was a loan of money and was usurious, where the discount exceeded the legal rate of interest.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 83–89; Dec. Dig. § 34.*]

**3. Usury (§ 111*)—Pleading—Sufficiency.**

In an action to foreclose a second mortgage, an answer setting out facts showing that the mortgage was usurious, and alleging that it was made to the stenographer of the mortgagor's agent, who acted as a mere dummy, and that she immediately assigned it to plaintiff, sufficiently charged that the mortgage had no inception until it came to plaintiff.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 272–306; Dec. Dig. § 111.*]

**4. Usury (§ 114*)—Evidence—Admissibility.**

In an action to foreclose a second mortgage given to the stenographer of the mortgagor's agent and by her assigned to plaintiff, evidence that she had no real interest in the transaction, and that the mortgage had no inception until assigned to plaintiff, was admissible, though the transactions testified to were not in plaintiff's presence, and he had no notice thereof.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 324, 325, 327; Dec. Dig. § 114.*]

**5. Usury (§ 103*)—Estoppel to Plead.**

As against a purchaser in good faith relying on a mortgagee's representations that a second mortgage was a valid one, the mortgagor was estopped, to the extent of the money actually paid, from claiming that the mortgage had no inception in the hands of the mortgagee, so as to be void for usury.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 259; Dec. Dig. § 103.*]

**6. Principal and Agent (§ 157*)—Scope of Agency—Purchase of Mortgage.**

That the purchaser of a second mortgage trusted the agent of the mortgagor to see to the details of his purchase of the mortgage did not make the latter his agent generally or for other than the limited purpose.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 588; Dec. Dig. § 157.*]

Action by Joseph Schanz against Carl Sotscheck and others, to foreclose a mortgage. Judgment for plaintiff.

See, also, 86 Misc. Rep. 121, 145 N. Y. Supp. 778.

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

149 N.Y.S.—10

Herman Goldman, of New York City (William F. Goldbeck, of New York City, of counsel), for plaintiff.

Putney, Twombly & Putney, of New York City (Henry B. Twombly, of New York City, of counsel), for defendants.

PENDLETON, J. This is an action to foreclose a mortgage on real estate. The answer sets up the defense of usury, with a counterclaim based on the same allegations seeking to have the bond and mortgage declared void. It is substantially undisputed that defendant Carl Sotscheck, the mortgagor, desired to raise sufficient funds to pay off an existing second mortgage of $10,000 on certain real estate by means of a second mortgage on the said property; that one Zittel negotiated with said defendant in regard to the matter and told defendant it would cost the usual 10 per cent. discount on the sale of a second mortgage, and $600 to cover expenses, making a total of $1,800, and the mortgagor, by letter, authorized Zittel to secure for him a mortgage for $12,000, agreeing to pay $1,800 therefor, to include expenses, "the loan" to be closed before the 15th of the month. Any claim that the mortgagor understood the $1,800 was solely to compensate Zittel for services in securing the loan is inconsistent with the evidence of both the mortgagor and Zittel, and is not claimed here.

[1] As to plaintiff, it may be assumed, for the purposes of this opinion, that he intended to and understood he was purchasing a valid existing second mortgage at a discount of 10 per cent., a transaction entirely free from usury on well-settled authorities.

[2] The following facts appeared: Plaintiff told Zittel he would buy a second mortgage of $12,000 on the property in question at a discount of 10 per cent., and Zittel retained an attorney, with instructions to create such a mortgage in order that plaintiff might buy it. On the day before the mortgage was executed, plaintiff gave Zittel $10,800 for the purpose of buying the mortgage. A bond and mortgage was signed by defendants, in which one Miss Sinnigar was the mortgagee, for $12,000. Miss Sinnigar was a stenographer in the office of the said attorney and was selected by him as the mortgagee. She had no interest in the matter, and acted as a dummy only. Zittel & Co. drew two checks, one for $10,000, and one for $2,000, to the order of Miss Sinnigar. She indorsed both to the mortgagor. He then indorsed the $10,000 check to the attorney for the holder of the existing mortgage, which was to be paid off, and the other to Zittel & Co., the makers of the check, and Zittel gave another check for $200 to the mortgagor, making up the $10,200; that is, $12,000, less the $1,800 aforesaid. The mortgage was delivered to Miss Sinnigar, and she assigned it without any further consideration to the plaintiff. All these proceedings were taken under the advice and direction of the attorney, given in pursuance of his retainer to "create" a valid mortgage for plaintiff to buy, and were done, it may be assumed, for the purposes of this opinion, in the belief in good faith that a second mortgage was thereby "created," which plaintiff could, and legally did, buy at a discount, and that a method had been discovered, as plaintiff's counsel puts it, not of covering up usury or evading the statute, but of "keeping outside of the statute."

While it is well settled that the purchase in good faith of an exist-ing mortgage at a discount is not violative of the statute against usury, the transaction being not a loan but a purchase of property, it is equal-ly well settled that where the mortgagee had advanced nothing, and the mortgage was not enforceable in his hands, it had no inception, was not a valid mortgage, and could not be the subject of sale, and the transfer of it to one at such a discount from its face as would, with the interest payable under its terms, exceed the legal rate is violative of the usury statute, although the transferee acted in good faith, with-out notice that the mortgage had had no previous inception, and believ-ed at the time he was purchasing a valid existing mortgage. Miller v. Zeimer, 111 N. Y. 441, 18 N. E. 716; Tiedemann v. Ackerman, 16 Hun, 307, affirmed 84 N. Y. 677; Verity v. Sternberger, 62 App. Div. 112, 70 N. Y. Supp. 894, affirmed 172 N. Y. 633, 65 N. E. 1123; East-man v. Shaw, 65 N. Y. 522. The mortgage, not being an existing mortgage, could not be the subject of sale, and the transaction could only be the loan of money. The law stamps the transaction with the characteristics of a loan, as it could have no other character (East-man v. Shaw, 65 N. Y. 522; Miller v. Zeimer, 111 N. Y. 441, 18 N. E. 716), and, being a loan at a greater rate of interest than allowed, it falls within the express provisions of the statute. Cases are cited in which it is said that, to constitute usury, there must be a mutual in-tent to violate the statute, viz., on the lender's part to exact, and on the borrower's part to pay, a higher rate of interest than allowed. Such cases have no application here. They are cases of loans where the question was whether certain payments were really and in fact payments for services or, under that guise, a bonus in addition to the legal interest for the loan or forbearance of money. Here no such question is involved. The interest and the discount exceed the legal rate, if the transaction is a loan, as it is, for it can be nothing else. It falls within the express statutory prohibition, and this irrespective of any actual intent of the parties. The intent is only important where the question of usury or no usury depends on whether payments were in fact for interest and bonuses or discounts, or for some bona fide other service or purpose.

The above rule of law, that where the mortgage has had no previ-ous inception the transaction is a loan within the statute, is too well settled to require the citation of authorities to support it, and the learn-ed counsel in the elaborate and ingenious brief submitted expressly disclaims any intention of calling it in question. As has been so often pointed out, the test as to whether the mortgage had any inception be-fore the assignment to plaintiff must depend on whether there was any real transaction between the mortgagor and the mortgagee named in the instrument, or whether there was only the semblance or make-believe of a transaction. It can scarcely, on the evidence in this case, be claimed that there was here a real transaction between the mort-gagor and Miss Sinnigar. She was selected by Mr. Day to be the mort-gagee named; she parted with nothing and received nothing. In real-ity the $10,000 check represented the money of plaintiff. The $2,000 check was evidently never intended to be cashed; it was drawn by

Zittel & Co. and indorsed back Zittel & Co. all as part and parcel of one transaction. The successive indorsements represented no more real transactions than if a check to bearer were handed around among a number of persons until it finally came back to the maker. Whether or not it was deposited does not appear, but it is immaterial; being an order to transfer from drawer's credit to drawer's credit, it was ineffective and meaningless. Certainly there was nothing real in such transaction. Miss Sinnigar paid nothing for the mortgage when made to her and received nothing on its assignment. She exercised no judgment, ran no risk, could get no benefit, and stood neither to win nor lose, and the very ingenious counsel for plaintiff nowhere really claims that there was any real business transaction in the matter. The burden of his brief, and in fact his entire argument on this branch of the case, is, in final analysis, that what was done gave the mortgage inception, because it was intended by the parties to thereby, as he calls it, validate the mortgage. It requires no argument to show that if the transaction was not in itself real, but only make-believe (that is, did not represent a transfer or creation of actual rights and interests), it did not become so because the parties designed or intended or thought they could thereby validate a mortgage so as to make it the subject of a valid sale. The essence was not changed by labeling it the validating of a mortgage. A new name cannot make that real which is not. If any additional evidence of the unreality of the transaction is required, it is to be found in the very admissions made in the brief of plaintiff's counsel, where he says:

"It is undoubtedly a fact that the consideration required to be given to validate the inception of a mortgage is rarely, if ever, a permanent payment. It is inconceivable that a second mortgage could ever be sold by a mortgagor at a discount, if such were the case. It is inconceivable that any one would lend, say, $12,000 on a $12,000 mortgage to validate it, and at once turn around and sell it for $10,800, unless he eventually got the difference back."

This is most persuasive testimony to the unreality of the transaction. But, if by a violent effort of the imagination we should undertake to give to Miss Sinnigar's intervention the dignity of a real transaction, it would then appear that she expected and understood she was not paying $12,000 for the mortgage, but was in some way to get part back, and this of itself would make the mortgage originating in her hands usurious, and of course the usury would follow it to plaintiff. Whether, therefore, it is assumed that there was no real transaction between the parties taking part prior to the assignment to plaintiff (that is, the defendants and Miss Sinnigar), or that the loan was made by Miss Sinnigar, the same result is arrived at.

There is nothing in any of the cases in conflict with the views here expressed. In Dunham v. Cudlipp, 94 N. Y. 129, the mortgage was given for a bona fide debt; it was enforceable in the mortgagee's hands; it represented a real transaction, and thereby had an inception, and was properly held a subject of sale; and the fact that it was, at the time of its inception, intended plaintiff should buy it did not make it any less so. There the mortgage was created out of something (a valid existing debt); in the case at bar it was attempted to be created out of

nothing. The difference is self-evident. The same distinction is manifest on the most cursory examination of Union Dime Savings Inst. v. Wilmot, 94 N. Y. 221, 46 Am. Rep. 137, and Siewert v. Hamel, 91 N. Y. 199, and other cases cited by plaintiff.

It is entirely plain that this case presents another of the often tried, and always failing, attempts by forms and juggling to evade the usury statute. Counsel contends that, unless a mortgage can be validated or created, it will be impossible to sell second mortgages at a discount, with the inferential result that the second mortgage business will cease. If so, the remedy, if desirable at all, must be found in the Legislature, which has already exempted certain classes of cases from the effect of the statute.

[3] Plaintiff urges that the usury, founded on the fact that the mortgage was not an existing valid mortgage and had had no previous inception when assigned to plaintiff, is not within the allegations of the answer. The answer, however, alleges all the facts necessary to make out that defense. It alleges that the mortgage was made to Sarah E. Sinnigar; that she was not the real party in interest, but was a mere dummy; that she furnished none of the money received by defendant; and that she at once transferred and assigned said bond and mortgage to the plaintiff. These allegations are sufficient and do in effect allege that the mortgage had no inception until it came to plaintiff, and, taken in connection with the allegation as to the usurious character of the mortgage, substantially allege the ground of usury now relied on. Other allegations as to plaintiff's knowledge are unnecessary and may be treated as surplusage and disregarded. The allegations of the answer fairly apprised plaintiff of defendant's present contention.

[4] The evidence, as to the admission of which decision was reserved, being evidence tending to show the fact that there was no real transaction between defendant and Miss Sinnigar, and that the mortgage had had no inception until assigned to plaintiff, was competent and material, although the transactions testified to were not in plaintiff's presence and he had no notice thereof, and the motion to strike out is therefore denied.

[5] That the doctrine of estoppel in pais applies to one seeking to set up usury to the extent of the money actually paid, although enunciated with some hesitation at first, is now settled by well-considered authorities in this state. Verity v. Sternberger, 62 App. Div. 112, 70 N. Y. Supp. 894; Payne v. Burnham, 62 N. Y. 69; Miller v. Zeimer, 111 N. Y. 441, 18 N. E. 716. The rule is not confined to any particular form of representation, and although the so-called estoppel certificate, not having been delivered to plaintiff up to the time of the carrying through of the transaction, could not have been and was not relied on by him, and hence is not available as a basis of estoppel, still in view of the evidence that Zittel was acting for the mortgagor in securing the money, and the knowledge of the latter that it was proposed to be done by the sale of a second mortgage, the representations made by Zittel to plaintiff are imputable to the mortgagor, and were in effect an assurance to the plaintiff that he was purchasing an existing valid mortgage.

In Barnett v. Zacharias, 24 Hun, 304, affirmed 89 N. Y. 637, it was held not necessary that there should be express statements; if the negotiations, fairly construed, were tantamount to representations, on the strength of which plaintiff acted, the doctrine of estoppel in pais applied.

I think the case at bar falls squarely within the rule of that decision. That plaintiff parted with his money on the strength of Zittel's assurances as to the character of the investment is plain. As was said in Barnett v. Zacharias, 24 Hun, 304:

"What transpired at the interview which led to the plaintiff's agreement to take the assignment was sufficient to create the belief that the bond and mortgage were lawful obligations existing against the defendants. If that had not been the fact, they could have been in no danger from the threatened foreclosure, and could have had no object in endeavoring to induce the plaintiff to acquire the title to them. That would ordinarily be the impression produced upon the mind of any intelligent person by what was said, and for that reason it was equivalent to an affirmative representation that no obstacle stood in the way which would prevent the enforcement of the mortgage as a security against the property described in it. The plaintiff was induced to act upon such an understanding of its nature, and, although that was not declared in words to be the case, the effect was the same, because it was plainly to be implied, which was sufficient to constitute what the law has denominated an estoppel. * * * Where one by his words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act upon that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the time."

[6] It is urged by defendant that Zittel was intrusted by plaintiff with the money, and therefore was his agent, and Zittel's knowledge was plaintiff's knowledge; and that the contemporaneousness of the dates of the execution of the mortgage and the assignment affects plaintiff with notice, or was sufficient to put him on inquiry. For the purposes of this suit it is enough to say as to the latter matter that it does not appear plaintiff had knowledge of that fact when he parted with his money. Statements that the matter was set for closing and the like might well have been understood by him to refer only to the examination and passing upon the title to the premises. The fact that plaintiff trusted to Zittel to see to the details of the carrying out of his proposed purchase did not make the latter an agent generally, or for other than the limited purpose. That a special or limited agency for one party may coexist with a general agency for another is recognized. Jones v. Gay (Sup. Ct.) 139 N. Y. Supp. 158.

Judgment must be for plaintiff to the extent of $10,800 and interest as against the mortgagor, but against defendant wife's dower interest the mortgage is void. Counterclaim dismissed as to husband; sustained as to wife. Requests to find passed on. Plaintiff's attorney will submit on notice findings to be signed in accordance herewith and rulings on requests.

Judgment accordingly.