CHARLOTTE S. WEISS, Plaintiff, *v.* SOL SCHILDKRAUT et al. (William Crovello and Rose Crovello, His Wife, Impleaded), Defendants.

(Supreme Court, Queens Special Term, July, 1921.)

Mortgages — foreclosure — subordination of mechanics' liens good consideration for bond and mortgage — when mortgage not deemed to be usurious.

> After plaintiff had refused to accept an assignment of a usurious mortgage given to procure a loan from plaintiff to the brother of the mortgagee who was but a dummy in the transaction, the mortgage, as a separate and distinct transaction, was assigned to one who was threatening to foreclose a mechanic's lien on the property of said brother. *Held*, that the consideration for the bond and mortgage was the subordination of the mechanic's lien, and that in the hands of the assignee the mortgage was not usurious, and having a valid inception in the hands of the assignee it was not usurious for plaintiff to buy it, and, in an action to foreclose it, the defense of usury cannot avail.

ACTION to foreclose mortgage.

Felix Reifschneider, for plaintiff.

R. W. Kellogg, for defendant Schildkraut.

DIKE, J. This is an action to foreclose a mortgage. The defense is usury. Complaint alleges, in substance, that the defendants William Crovello and Rose Crovello, his wife, made a bond and mortgage for $3,600 to Cosimo Crovello on January 18, 1918; that Cosimo Crovello assigned said bond and mortgage to George Kaiser, Jr., on February 8, 1918; that Kaiser assigned the bond and mortgage to the plaintiff, Charlotte S. Weiss, on February 13, 1918; that on January 22, 1918, the defendants Giovani Schettino

and Charles C. Bunker guaranteed the payment of said bond and mortgage by a guarantee in writing indorsed on the bond for the purpose of inducing the plaintiff to purchase the bond and mortgage; that the defendants failed to pay an instalment of principal and interest which became due July 18, 1919; and that the plaintiff so elected to declare the full amount of the mortgage due and payable. The answer of the defendants Crovello denies all of the allegations of the complaint excepting the formal assignment of the bond and mortgage assignments and guarantee and the fact that said defendants have not paid the instalment of principal and interest mentioned in the complaint. It is further affirmatively set up that the bond and mortgage and all of the assignments . were executed in pursuance of an agreement that the plaintiff make a loan of $3,000 to the defendants Crovello upon payment by the said defendants of the usurious bonus of $600 for said loan.

It is not disputed that the execution of the mortgage to Cosimo Crovello was in pursuance of the purpose of William Crovello to procure loan thereon from the plaintiff on the usurious bonus. Had the plaintiff taken the assignment thereof from Cosimo Crovello when that was proposed to her in the office of her attorney in Manhattan, the transaction would have undeniably been usurious. Cosimo Crovello was but a dummy in the transaction. All of his testimony clearly shows that he was acting in the transaction for the accommodation of his brother, who was in need of money. The plaintiff refused to accept the assignment because of the obvious indications of an intent to defraud creditors, and by her refusal the transaction in that form ended completely. Plaintiff wanted to buy a mortgage at a discount. She had money to invest. She had a right to buy any good mortgage

for any price agreeable to the buyer and seller. The
Kaiser Lumber Company had a lien upon the property
of William Crovello. It was threatening to foreclose
the lien. An entirely new transaction occurred and
Cosimo Crovello assigned the bond and mortgage in
suit to Kaiser, who, in effect, was the Kaiser Lumber
Company. This was a separate and distinct trans-
action. So, too, was the later assignment by Kaiser
to the plaintiff.

Defendants assert that the mortgage was funda-
mentally " sham," and therefore invalid in its incep-
tion. It was only sham between Cosimo Crovello and
his brother William in the sense that it was not sup-
ported by consideration, and not from any taint of
usury for between them there was no question of
excessive interest, or any interest at all. The fact is
that the bond and mortgage in the hands of Kaiser
was free from any taint of usury. A valuable con-
sideration for the bond and mortgage was the sub-
ordination of the mechanic's lien of the Kaiser com-
pany. This was the inception of the mortgage. It
then became fully vitalized. A mortgage has its
inception, from the legal point of view, from the time
of its delivery for a legal consideration. *Schafer* v.
*Reilly,* 50 N. Y. 61; *Verity* v. *Sternberger,* 62 App.
Div. 112, 114; affd., 172 N. Y. 633. The test of its
salability by the Kaiser company lies in the ability
of that company to maintain an action for foreclosure.
Having a valid inception in its hands it was not
usurious for the plaintiff to buy it for what she
thought it was worth. *Dunham* v. *Cudlipp,* 94 N. Y.
129; *Union Dime Savings Institution* v. *Wilmot,* Id.
221; *Weyh* v. *Boylan,* 85 id. 394.

To further strengthen the position of the plaintiff,
we have the situation arising under the estoppel cer-
tificate made by William Crovello assuring the plain-

tiff of the validity of the bond and mortgage. This would act as an estoppel *in pais,* so excellently defined by Nelson, J., in *Welland Canal Co.* v. *Hathaway,* 8 Wend. 481, 484: "As a general rule, a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." The conduct and acts of a mortgagor may be such as equitably estop him from asserting a defense against the assignee which would be open to him as against the mortgagee, where one by his wilful conduct causes another to believe in the existence of certain facts, and who is thereby induced to act on the belief and does so in good faith and parts with his money in reliance thereon, is estopped from denying the existence of such facts. As was said by Judge Thomas in his splendid work on Mortgages (page 290): "In such a case it would be against good conscience and a fraud, to deny the truth of the statement thus made and acted upon; and this is the point upon which the question of estoppel turns." But aside from this, I think the plaintiff clearly prevails, and that the evidence in this case clearly indicates that under the advice of counsel after careful investigation, and conversations with the vice-president of the Rockaway bank, and the further and final assurance given by the guarantee of Bunker and Schettino, plaintiff is shown to have purchased a mortgage and is entitled now, upon default, to recover the full amount, with costs, and an allowance of five per cent.

Judgment accordingly.