TIMOTHY A. SMITH et al., Appellants, *v.* MOSES H. CROSS et al., Respondents.

C. and W. owned certain real estate as partners; W. executed a quit-claim deed of his interest to C., who executed in return his bond with a mort-gage on the premises for $5,000, which the mortgage recited was for the purchase-price. On the same day W. assigned the mortgage to S. for $4,500, both C. and W. joining in a statement that it was given for a good consideration and not for the purpose of raising money. C. and wife subsequently conveyed the premises to M., who thereafter conveyed them to Mrs. C. In an action to foreclose the mortgage by plaintiffs, who claimed as assignees, the defense was that the transaction was, in fact, a usurious loan to the firm, the deed and mortgage having been executed at the instigation of S. to avoid the usury law. S. died prior to the commencement of the action. On the day before the trial W. exe-cuted to Mrs. C. a quit-claim deed of his interest in the premises. W. was called as a witness for defendants, and was allowed to testify, under objection and exception, to a conversation had with S. before the execu-tion of the mortgage, which tended to sustain the defense. *Held* error; that the witness was incompetent under the Code of Civil Procedure (§ 829).

(Argued November 28, 1882; decided December 15, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made October 28, 1881, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*P. C. Williams* for appellants. The witness Wilson was not a competent witness concerning personal transactions and communications with Smith, deceased, assignee of the bond and mortgage. (Code of Civ. Proc., § 829 ; 62 N. Y. 83 ; 14 Weekly Dig. 156 ; 26 Hun, 272, 392 ; 79 N. Y. 415–20 ; 24 Hun, 32–4–5.) The words "assignment or otherwise" are broad enough to, and do cover a transfer of real estate. (*Mattoon* v. *Young*, 45 N. Y. 697.) The defendant, Mrs. Cross, was not, and is not, in a position to interpose the defense of usury. (*Walch* v. *Cook*, 65 Barb. 30 ; *Knickerbocker L. Ins. Co.* v. *Wilson*, 13 Hun, 321 ; *Smith* v. *Cross*, 16 id. 489 ; *Huntley* v. *Harrison*, 24 N. Y. 170 ; *Berdan* v. *Sedgwick*, 44 id. 626 ; *Hetfield* v. *Newton*, 3 Sandf. Ch. 564 ; *Knickerbocker L. Ins. Co.* v. *Nelson*, 78 N. Y. 137.) Cross by the deed to his wife waived the usury and elected to affirm the mortgage. (*Huntly* v. *Harrison*, 24 N. Y. 170 ; *Berdan* v. *Sedgwick*, 44 id. 626.)

*D. O'Brien* for respondents. As the bond and mortgage in question had no inception until they were transferred by Wilson to Smith at a discount of $500, they were necessarily usurious as matter of law, irrespective of the intent of the person who advanced the money, or any other party to the transaction. (*Vickery* v. *Dickson*, 62 Barb. 272 ; *Eastman* v. *Shaw*, 65 N. Y. 522 ; *Bank* v. *Alvord*, 31 id. 473 ; *Quackenbos* v. *Sayer*, 62 id. 344 ; *Fiedler* v. *Darrin*, 50 id. 437.) The covenant in the deed of Mrs. Cross to the effect that she bound herself to pay the mortgage was a nullity and created no obligations against her and deprived her of no right that she

could assert had this clause not been inserted in the deed. (*Vrooman* v. *Turner*, 69 N. Y. 280 ; *Smith* v. *Cross*, 16 Hun, 487 ; *Munson* v. *Dyett*, 56 How. Pr. 333 ; *Walch* v. *Cook*, 65 Barb. 30, 32 ; *Ins. Co.* v. *Nelson*, 13 Hun, 321 ; *S. C.* affirmed, 78 N. Y. 138 ; *Moore* v. *Deyoe*, 22 Hun, 218 ; *Knick. L. I. Co.* v. *Nelson*, 78 N. Y. 138.) The defendant, Moses H. Cross, was a borrower and had the right to interpose the defense of usury. (36 N. Y. 44 ; 13 Hun, 321 ; 5 Barb. 130.) He had in equity all the interest that was vested in him before the deed to his wife. (52 Barb. 412 ; 2 Rob. 307 ; 22 N. Y. 110, 517 ; 28 Barb. 633 ; 16 id. 556 ; 2 Lans. 21 ; 26 How. 250, 496 ; 24 N. Y. 372, 17 Barb. 157 ; 9 id. 366.) The plaintiffs could not preclude him from setting up usury by showing that he had been discharged in bankruptcy. (*Strong* v. *Strickland*, 32 Barb. 284 ; *Smith* v. *Cross*, 16 Hun, 487 ; *Knick. L. I. Co.* v. *Nelson*, 78 N. Y. 137.) The testimony of Wilson was competent under section 829 of the new Code and was properly admitted. (*Richardson* v. *Warner*, 13 Hun, 13 ; *Allis* v. *Stafford*, 14 id. 418 ; *Nearpass* v. *Gilman*, 16 id. 121 ; *Church* v. *Howard*, 17 id. 5 ; *Marsh* v. *Brown*, 18 id. 319 ; *Pursell* v. *Fry*, 19 id. 595 ; *Hill* v. *Alvord*, id. 79 ; *Ely* v. *Clute*, id. 36 ; *Holcomb* v. *Holcomb*, 20 id. 156 ; *Hobart* v. *Hobart*, 62 id. 83 ; *Miller* v. *Montgomery*, 78 id. 285 ; *McKnight* v. *Wheeler*, 6 Hill, 492 ; *Delaware Bk.* v. *Jarvis*, 20 N. Y. 226 ; *Marford* v. *Davis*, 28 id. 485.)

EARL, J. This action was brought to foreclose a mortgage of $5,000, dated August 24, 1872, and the defense interposed by Moses H. Cross and Mary J. Cross was usury. The facts so far as now material are as follows : For several years prior to the date of the mortgage, Moses H. Cross and Samuel Wilson were engaged in business as partners, and as such partners they had for several years owned the real estate covered by the mortgage. At the date of the mortgage Wilson executed a quit-claim deed of his interest in the real estate to Cross, and at the same time Cross executed to him the mortgage in question to secure the payment of $5,000, in five years from the

date thereof. It was recited in the mortgage, that the money secured thereby was for the purchase-price of the premises described in the mortgage. On the 26th day of August, Cross and Wilson both signed a statement, in which Cross, the mortgagor, consented to the assignment of the mortgage by Wilson to Timothy Smith, and represented that it was a good and valid security, given for a good and valid consideration, not made for the purpose of raising money, and that there was no usury in, or defense, to the same; and in which Wilson represented that the mortgage was made for a good and valid consideration, and not for the purpose of raising money, and that there was no defense to the same. On the same day Wilson executed an assignment of the mortgage to Smith, in which he guaranteed the collection thereof and that there was no defense thereto. On the same day the bond and mortgage with the statement signed by Wilson and Cross, and the assignment, were delivered to Smith, and he paid Wilson therefor the sum of $4,500. Thereafter in the month of August, 1873, Smith died, leaving a last will and testament, in which the plaintiffs were named as executors. In August, 1875, the executors assigned the bond and mortgage to one McCartin, and he on the same day assigned the same to the plaintiffs.

Upon these facts, standing alone, it would not be disputed that the plaintiffs had a good title to the mortgage and that the defense of usury could not prevail. On the face of all these papers the mortgage had a legal, valid inception, and Smith could purchase the same at any discount which the mortgagee would consent to.

But facts are now to be stated upon which the defense of usury is based. The defendants claim, that at the date of the mortgage Cross and Wilson were pecuniarily embarrassed, and desired to borrow money, and that they applied to Smith to loan them $5,000, to be secured by a mortgage to be executed by them upon the firm real estate; that Smith required that one of the partners should deed the real estate to the other, and the grantee should give back to the grantor a mortgage for $5,000, and promised that then he would cash the mortgage

for the sum of $4,500, and that the deed, mortgage, written statement and assignment were all made and executed to carry out that scheme; and that the money was paid over in pursuance thereof by Smith to one of the members of the firm, and used and applied in payment of the firm debts.

If, by his deed, Wilson actually divested himself of all interest in the real estate, and vested the absolute title thereto in Cross, so that the sale was effectual between them, and if the mortgage was actually given to secure the purchase-money, so that Wilson could hold the mortgage against Cross, and enforce it against the real estate, then the mortgage had a valid inception, no matter what the motive for the execution of the deed and mortgage was. Smith had the right to insist that he would not loan the firm any money upon their mortgage, and that a sale should take place, and a mortgage thus be created which he could buy at any rate of discount the parties could agree upon. To illustrate: if A. applies to B. for the loan of money, B. may refuse to loan, and say to A. that he must procure a valid mortgage which he can buy at a discount, and he may suggest to A. that he might sell his real estate to C. and get a mortgage from C., and that he would then buy the mortgage at a discount. If A., in pursuance of the suggestion and scheme, actually sells his real estate to C. and takes a valid legal mortgage from C., that mortgage has a valid inception and is subject to sale and traffic like any other chose in action. If that was the transaction between Wilson and Cross then there was no usury in this mortgage, and the defense must fail on that ground.

But if the conveyance from Wilson to Cross was a mere form, and Cross, after the conveyance, still held the title to the property for the firm, the real estate actually still belonging to the firm, and if this mortgage was executed for the firm simply for the purpose of raising money, and all this was done at the instigation of Smith, or if this was all known by Smith to be the actual state of the facts, then it was in effect a loan to the firm upon the mortgage of the firm, the mortgage having no inception until it passed into the hands of Smith. Then it

was, in substance and effect, a lending of money upon the firm mortgage; and the mortgage, notwithstanding the written representations which were made, was subject to the defense of usury. If these were the facts, and if this is the view to be taken of the case (and it is the only view which will enable the defendants to interpose the defense of usury), then Wilson, after his formal conveyance to Cross, still, as a member of the firm, retained some interest in the real estate. As said by Mr. Justice JOHNSON in *De Wolf* v. *Johnson* (10 Wheat. 385), "Usury is a mortal taint wherever it exists, and no subterfuge shall be permitted to conceal it from the eye of the law."

There is another view of the facts of this case which it is possible to take. The facts may have been as last supposed, and yet Smith, relying upon the written statements of Cross and Wilson, may have believed that they were as first supposed, and in that case Cross and Wilson, and all persons holding under them, would be estopped from alleging the usury.

In June, 1873, Cross and his wife conveyed the real estate to one Maltby by a deed containing covenants of warranty; but the deed was in fact intended to secure Maltby for certain liabilities for indorsements which he had assumed for Cross. Prior to August 1, 1875, Cross had discharged those liabilities, so that Maltby had no further claim upon the deed, and simply held the title in trust for Cross, and on that day, at the request of Cross, he executed a deed, with full covenants of warranty, conveying the premises to Mrs. Cross free and clear from all incumbrances except the mortgage in question, which Mrs. Cross assumed and agreed to pay, as a part of the purchase-money. On the day before this case was tried, Wilson executed a quit-claim deed to Mrs. Cross of all his interest in the real estate.

Upon the trial to prove the usurious arrangement, the defendants called one Perkins, who testified that he knew Smith, and that in 1872 he was the book-keeper for Cross & Wilson; that some two or three weeks before the transfer of the mortgage to him, he, Smith, talked with the witness, and said the firm wanted to borrow some money; that they proposed to give a

mortgage on their real estate, and wanted to know if the property was worth $5,000; that they wanted to give a company mortgage, but it would not do to have it in that way; that one must give a deed to the other, and the other give back a mortgage for $5,000, and he would give them $4,500 for the mortgage. On cross-examination he testified that he saw Smith at the store, talking with Cross, as often as twice a week, before the check for the purchase of the mortgage was given, and also that he had told the plaintiffs he did not know any thing about the suit. Cross was called as a witness, and testified, against the objection of the plaintiffs, that the arrangement between him and Wilson was that Wilson should give him a quit-claim deed, and that he should give Wilson a mortgage; that Wilson should sell that mortgage to Smith, for the purpose of raising money to pay the debts of the firm; that the mortgage was to be made for $5,000, and Wilson should sell it to Smith for $4,500, and that the deed was given by Wilson to him, to enable him to give the mortgage to raise money, and that there was no other consideration for the deed, and that he gave the bond and mortgage to Wilson to raise money to pay the obligations of the firm of Cross & Wilson. Wilson was called as a witness for the defendants, and said that the purpose for which he gave the deed to Cross was to raise money to pay firm debts, and that there was no other consideration for the bond and mortgage, and that it was understood between him and Cross, before he gave the deed, that Cross was to give back a mortgage for $5,000, and that he should negotiate the same and raise money with which to pay firm debts; that he had a conversation with Smith some two weeks before the mortgage was given, at his son's barn in the city of Watertown. He was then asked to state that conversation and the plaintiffs objected upon the ground that the testimony offered was incompetent and immaterial, and also upon the ground that the witness was not competent to testify to any personal transaction or communication between himself and Smith, who was dead, under section 829 of the Code. The referee overruled the objections, and permitted the witness to answer, and he testified that he

saw Smith and asked him if he was going to let him have some money, and he said he would ; that he asked him if he would not take a mortgage right from the firm, and he said he would not ; that it would not do; that one must sell to the other, and that other give the mortgage, and then he would give for a $5,000 mortgage $4,500; that he spoke of ten per cent, and that that was about all that was said there.

The question now to be determined is whether Wilson was a competent witness to testify to the facts sworn to by him under the section of the Code cited. That section provides as follows: "Upon the trial of an action  *  *  *  *  a party or person interested in the event, or a person from, through or under whom such party or interested person derives his interest, or title, by assignment or otherwise, shall not be examined as a witness  *  *  *  *  in behalf of the party succeeding to his interest, or title, against  *  *  *  *  a person deriving his title or interest from, through or under a deceased person  *  *  *  *  by assignment or otherwise, concerning a personal transaction, or communication, between the witness and the deceased person," etc. These plaintiffs derived their title to the mortgage through a deceased person. The defendants, claiming to be the owners of the land covered by the mortgage, were seeking by their defense to protect the land against the mortgage, to defeat the mortgage as a lien upon the land ; and they derived their title to the land, through, or under Wilson, by his deed to Cross in 1872, and the deed, just before the trial of the action, to Mrs. Cross. He was called as a witness on behalf of parties who succeeded to his interest, whatever it was, in the land, and he was called to protect that land and that interest against the mortgage. He was, therefore, clearly, within the letter and the spirit of that section of the Code, an incompetent witness.

But the claim is made that this evidence of Wilson's did not harm the plaintiffs; that it could all be stricken out, and yet the decision of the referee must have been the same. We cannot take that view of the evidence. The evidence of Wilson was the most important in the case to prove the alleged

usurious scheme, and to bring it to the knowledge of Smith. Without that evidence the only other evidence in the case was that of Perkins, and that standing alone, and literally believed, would not necessarily be sufficient to satisfy any court that the $4,500 was advanced by Smith upon the usurious scheme alleged.  It was a conversation which took place some two weeks before the mortgage was assigned.  The purport and effect of that evidence was, that Smith would not loan to the firm any money, but that, if one member of the firm would deed to the other and thus get a mortgage for $5,000, he would take the mortgage for $4,500.  That could be literally done and yet there be no usury.  If the conveyance was a real conveyance, and the mortgage a real mortgage, as we have before stated, then Wilson could sell it for $4,500, or for any less sum, and that is all the evidence of Perkins shows.  But even if it be assumed that it proves more, it cannot be said that his evidence was uncontradicted by any circumstances and was entitled to absolute credence.  The papers all purport to be parts of a real transaction; the mortgage itself recites that it was given for purchase-money; the written certificate, signed by the parties, shows that the mortgage had a valid inception; that it was a real mortgage; that there was no usury, and no defense to it.  In view of all these and the other circumstances of the case no referee would be absolutely bound to infer from the evidence of Perkins that, after all, the transaction was to the knowledge of Smith simply a loan of money to the firm upon a mortgage of the firm, which it would have to be before the defense of usury could be interposed.

Other interesting questions have been ably discussed by the learned counsel who appeared before us, particularly the one relating to the effect of the assumption by Mrs. Cross in the deed to her to pay the mortgage, but we do not deem it needful to consider them, as they may not become important upon another trial, and, if they do, may depend upon different or further facts.  It is sufficient now to hold that Wilson was improperly allowed to testify to a personal transaction or com-

munication with the deceased person, through whom the plaintiffs claim and hold their mortgage, and for that reason the judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except Tracy, J., absent.

Judgment reversed.