Smyseb, J.
J. V. Hilliard, as administrator of John Strawn, deceased, filed his petition in the probate court of this county, asking for the sale of certain real estate to pay debts. The Union Central Life Insurance Company was made a party to that action, and answered in the probate court, setting up various notes of Strawn, secured by two mortgages, asserting a lien, and asking that its lien be first paid out of the proceeds of the sale. To this answer and cross-petition of the Insurance Company, the heirs of Strawn filed an answer; and the only defense that is material to be noticed here is that of usury in the loan made by the company to Strawn, and setting out various payments that had been made by Strawn in his lifetime, that ought to be credited upon the indebtedness; and that the rate of interest being usurious, the rate of interest ought to be limited to six per cent instead of seven per cent., as written in the notes. The case was heard in the probate court and appealed to the common pleas, and I did not notice whether it was here or in the probate court, but I think it was in the common pleas, that Hilliard, as administrator, filed as answer to the answer and cross-petition of the Insurance Company, setting up substantially the same facts that had been recited in the answer of the heirs.
In the court of common pleas a finding of facts and law was asked, and that was made, and is before us. A bill of exceptions was also taken, embodying all the evidence, and that is before us.
The whole contention is, that the court below erred in *436 finding from the facts, as the court found them, that there .was usury ,in this loan 'made by the Insurance Company to Strawn.
In 1889, in May, Strawn made an application for a loan of $12,500, He executed five notes; one for $10,500, and four for five hundred dollars each, bearing seven per cent, interest, payable anually. These notes were secured by mortgage. At the same time he executed four notes for five hundred and thirty-two dollars each, bearing the same Tate of interest, and they were secured by mortgage on the same real estate. At the same time or substantially so, a life insurance policy was issued by this company, not on the life of John Strawn, and not on the life of J. H. Strawn, a son who it was contemplated in the first instance was to b.e the party insured, but upon one Edward Roberts, a grandson of Strawn. This policy was for $12,500,and was on the ten year annual premium plan; and out of the moneys that were furnished Strawn by the company, the first premium, five hundred and thirty-two dollars, was retained by the company. Roberts was a minor. It was part of the arrangement, as is found in the finding of facta here, that this policy was to be assigned to the Insurance Company, as collateral security for the loan made to Strawn. Roberts was only about seventeen years of age at the time of this transaction-. By the transaction Strawn was bound to pay by his notes and mortgages the loan mace — the $12,500, and the twenty-one hundred and odd dollars secured by the second mortgage, all bearing 7 per cent, payable annually, while he received from the company but $11,968.0Q. The defense here is usury. What is usury? Usury is th,e demanding, the exacting and receiving by the lender of more than the legal rate of interest. It is contended as against this Company that the giving ofs the notes, and the execution of two mortgages were one transaction, and that the taking out of this insurance policy was - de *437 manded of Strawn as a bonus, and as a condition upon which the loan would be made. It is conceded that the money that Strawn was to. get was $12,500. He was not oh insurable age. His son, who was contemplated to be insured in the first instance, for some reason was declined by the.Company, and the young man, Roberts, substituted.
At the very outset we recur to the 25 Ohio .St., 420, the case of Kilgore v. Dempsey, decision by Judge Gilmore:
“In this case it appears from Indorsements on the note, that no interest was paid till long after the note was due, and it matters not what the parties may have done years afterwards, in continuing or extending the timé of payment of the loan, such subsequent acts will not affect the original transaction and render it usurious if it was not so when entered into.”
It is contended here on behalf of the company, and that is the law, that in order to find this contract usurious, whatever occurred subsequently would not affect it — would not taint it, but that usury must have been present at the inception of the contract. I read from the same authority (25 Ohio St., 420):
“These cases illustrate what shifts or devices are” (having recited various cases) “and the facts from which they will be inferred or presumed. Of course, their name is legion; but whatever they may be, they must enter into and be of the substance of the contract at the time it is made, to make it .usurious.”
But the courts, it is suggested, will look at the transaction, no matter what the shift or device may be that is resorted to for the purpose of disguising the true character of the transaction; courts will look at the transaction as it is, and, if usury is apparent, relief will be afforded.
There is a case in 14 Ohio St., 200, a decision by Judge Brinkerhoff. I read from page 209:
“We think the averments of the answer make out a plain case of usury under those sections of the statute; and one which avoids the paper in its hands tainted with *438 the usury, and any mortgage given to securó it; because such usurious contracts are expressly prohibited by law;” * * * “If a per centum, charged as exchange, or any part of it, was intended as a cover for usurious interest, the form in which it was done, and the name under which it was taken, will not protect the bill from the consequences of usurious agreements; and if the fact be established, it must be dealt with in the same manner as if the usury was expressly contracted for in the bill itself. ”
And I might cite the 90 N. Y., 549. So that the rule is well established that whatever device, or trick, or artifice, or shift may be resorted to for covering up the real transaction, if there was usury, relief can be afforded.
There are two authorities furnished us, 1 McCrary’s Reports, 234, and 2 McCrary’s Reports, 576, that hold that an agreement to take life insurance and pay premiums thereon in addition to the highest rate of interest allowed by law, is usury. They were both life inurance policies issued and a loan of money made at the same time.
In this case, if the insurance was demanded —'required as a condition upon which the loan was made —if it was on additional burden to the interest that was demanded, it would be usurious.
What is the evidence as it appears from the bill of exceptions and the finding of facts ? The young man Roberts is called as a witness; he says he is a grandson; he was then seventen years old, “I was born in 1876; I really didn’t know much about this business; I paid no premium myself; it was done to secure this loan to my grandfather of $12, 500 from said Company. I was not indebted to my grandfather in any way; I was never a partner of his in any way. No policy of insurance was ever delivered to me, and I never saw any policy I was going to school then.” On cross-examination: “I carried out the insurance transaction as they wanted me to.” “Yes, I believe that the application *439 for said insurance was made by me to get a long time loan to grandfather.”
John Strawn is called. “I was perfectly ingnorant about life insurance until they approached me to sign some papers. I heard afterwards my application was not accepted. I had applied first for a policy of life insurance and was rejected.” On cross-examination: “I was told by the company that unless father furnished a party to be insured for the amount of the loan, the company would refuse the loan.”
The deposition of one Clark is here; he is an officer of this company, and says that he was familiar with this loan. —how it was made, and why it was made and all about it; and he sets out the notes and everything that was done. He is asked this question:
“State what consideration, if any, John Strawn, the borrower in this case, received for the signing of these premium notes , to which you have testified, and the execution of the mortgage to secure them. Answer. A policy of life insurance was issued for the $12,500 upon the life of Mr. Roberts, and the same was assigned as collateral security for the mortgage loan to Mr. John Strawn.
“Question. Iam not sure that you' understand my last question. What I desire to know is this: Whether or not the issuing of this policy of insurance, the signing of those notes and mortgage by John Strawn, had any connection whatever with the loan to him of $12,500. A. The loan was dircetly dependent upon this life insurance, it being one of the requirements of the original approval.”
As I have said, what benefit is John Strawn getting from this insurance upon his grandson? He is made, by the contract, paymaster; and he is made paymaster why? He is made paymaster as a condition upon which he can get, not $12,500,but upon which he gets $12,500 with the first premium, $532, taken out. The policy of insurance could not have been, in any sense, for the benefit of John Strawn. And, appearing as it does from this evidence, that more *440 than the legal rate of interest or the rate contracted for was* exacted by the company from Strawn as a condition upon which the loan was made, I call attention to a case in the 7 Ohio St. 387, as furnishing the rule for our guidance-' in disposing of this case. In that case, Mitchell agreed for the sum of four hundred dollars some months in the future to loan Lockwood $8,000. It was apparent upon the-face of the contract that that was usurious. It was a bonus demanded as a condition upon which the loan would be-made. The court say,on page 406.
“Such reasons as these, especially the last, for taking the-bonus of four hundred dollars, only confirm in our minds the belief that the terms of the contract truly state the consideration of the four hundred dollars, and throw so much-suspicion over the only plausible reason given in the answer, to-wit, a compensation for looking to and changing securities, that we have had no hesitation in coming to the conclusion that the transaction is tainted with usury. It would require a clear, distinct and sufficient consideration for the-payment of the four hundred dollars to be alleged and proved, to overcome the usurious consideration stated in the-written contract.”
But, as against this claim of usury,it is urged on behalf of the company that it was competent for John Strawn, as-an independent contract,to effect insurance upon the life of his granuson; that he had an insurable interest in his grandson; and we are cited to-two cases in 94 U. S. 457, 561, as. decisive of the question that the grandfather had an insurable interest in the grandson.
We have examined these authorities, and we do not think they sustain the contention of .counsel in any regard. No-such question was before the court in these cases; on page 457, the court say:
“A policy of life insurance originally valid does not cease to be so by the cessation of the assured party’s interest in the life insured, unless such be the necessary effect of the provisions of the instrument itself. So held, where, súbse- " *441 quently to effecting an insurance by husband and wife upon their joint lives, payable to the survivor upon the death of either, they were divorced a vinculo matrimonii, and she, having thereafter paid the premiums to the time of his death, brought suit on the policy.
“Any person has a right to procure an insurance on his own life”, —mark the language, —on his own life, and assign it to another, provided.it be not done by way of cover for a wager policy. ”
Counsel rely upon a quotation in this case from a decision by Chief Justice Shaw. The case decided was decided by Justice Bradley.
We cannot doubt that a parent has an interest in the life of a child, and, vice versa, a child in the life of a parent; not merely on the ground of a provision of law that parents and grandparents are bound to support their lineal kindred when they may stand in need of relief, but upon considerations of strong morals, and the force of natural affection between near kindred, operating often more efficaciously than those of positive law.”
This case does not go to the extent of holding that a grandfather has an insurable interest in the life of his grandson;-but we are inclined to think, from what appears before us, that there may be some statutory provision in ^Connecticut by which grandchildren and grandparents are bound to care for and support each other. But, in Richards on Insurance, section 27, we think the true rule as to insurable interest is laid down:
“Every person has an insurable interest in the life and health of himself, of any person on whom he depends wholly or in part for education or support, of any person under- a legal obligation to him for the payment of money, or respecting property or services of which death or illness might delay or prevent the performance, and of any person upon whose life any estate or interest vested in him depends.”
*442 . But nowhere do we find it even suggested that a grandfather has an insurable interest in the life of a grandson.
It is said in 94 U. S. :
“The relationship between a party and another for whose benefit he effects an insurance upon his life, if a good and valid consideration in law for any gift or grant, furnishes no ground for the imputation that the transaction was by way of cover for a wager policy.
“A policy of insurance, taken out by a man upon his life for the benefit of his sister, who has no insurable interest in his life beyond that of relationship, is not void; and it is immaterial what is the arrangement between them for the payment of the premium.
“I might say that Chew effected insurance upon his own life payable to his sister, and, in addition to that relationship, he was her debtor.”
See also the authorities cited in the foot-notes of this case, Co-operative Ed. (U. R. R.) Book 24; and also 27 A. R. 321.
There is a case in 2 Am. State Reports, 572:
“A policy of insurance on life.of another,taken by one who had insurable interest in it, for the purpose of assigning it to a third person who had no such insurable interest, is void as a wagering policy in the hands of the assignee.”
It can hardly be contended that this insurance company had any insurable interest in the life of this boy, no matter what the interest might have been of the grandfather. In the first place, they could not contract with him; he was a minor. He never consented to the assignment of this policy.
He went through the manual operation of signing hib name; that is true; but'he was not a party to this transaction. This transaction was had wholly between this insurance company and Strawn, and nobody else. This boyjwas a mere figure head; nothing more and nothing less.
Upon the facts as set forth in this bill of exceptions (and we presume it is the same evidence that was before the court below) we do not see how the court could have come to any *443 other conclusion than that this contract was usurious. In the view we take cf it, the boy was a mere stranger to Strawn.
Follett & Follett, on behalf of Plaintiff.
J. V. Hilliard, J. M. Swartz and Edward Kibler,on behalf of Defendant.
He was clearly a stranger to this insurance company.
That they should exact and receive of Strawn, over and above the $12,500 that he was getting,$2500 more in round numbers, and seven per cent interest on the whole sum,they must have had in mind that they were going to make a profit out of the policy and the premiums that were to be paid over and beyond what the interest was that could be collected by law.
It follows from what I have said that this judgment is right, and must be affirmed.
By Judge Follett: What would they have made if the boy had died ?
Smysek J.: It wouldn’t have helped John Strawn’s estate, because the policy was made payable to the boy’s estate. A.nd it wouldn’t help him pay his $12,500 at all.