SCHANZ v. SOTSCHECK et al.   (No. 6774.)

(Supreme Court, Appellate Division, First Department.   April 9, 1915.)

1. USURY ☞34—MORTGAGE—EXECUTION AT DISCOUNT.
   Where a mortgage is executed directly to the lender of the money, he taking the same at a discount greater than the legal rate of interest, the transaction is usury.
   [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 83–89; Dec. Dig. ☞34.]

2. USURY ☞128—ESTOPPEL TO CLAIM—MORTGAGE—SALE AT DISCOUNT THROUGH DUMMY.
   Where plaintiff bought a second mortgage at a discount of 10 per cent. which had been executed to a dummy, who immediately assigned to him, such plaintiff, knowing or being chargeable with knowledge that the mortgage had no bona fide inception until assigned to him, could not invoke the doctrine of estoppel to enforce the mortgage, the transaction being usurious.
   [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 380–383; Dec. Dig. ☞128.]

3. PRINCIPAL AND AGENT ☞115—AGENT TO SELL MORTGAGE—AUTHORITY—REPRESENTATIONS.
   One authorized by a mortgagor to sell a bond and mortgage has implied authority to represent that they are valid and enforceable, thus estopping the mortgagor from contending the contrary.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 339–343; Dec. Dig. ☞115.]

4. PRINCIPAL AND AGENT ☞119—AGENT TO SELL MORTGAGE—ESTOPPEL CERTIFICATE.
   In an action to foreclose a mortgage which had been sold to plaintiff at a discount, having been executed to a dummy mortgagee merely to validate such sale as against the usury statute, an estoppel certificate executed by the mortgagor presumptively showed the authority of the agent, who had negotiated the sale to the plaintiff, or else showed ratification, since it proved that the mortgagor knew that his agent had negotiated such sale.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 391–401; Dec. Dig. ☞119.]

5. PRINCIPAL AND AGENT ☞8—APPOINTMENT—PRINCIPAL'S LIABILITY FOR ACTS OF AGENT—IMPUTATION OF KNOWLEDGE.
   In negotiations attending the sale of a mortgage at a discount, executed to a dummy mortgagee to avoid the usury law, an attorney, employed by the mortgagor and his agents alone, did not represent the buyer, so as to charge the latter either with his acts or his knowledge.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 16, 18; Dec. Dig. ☞8.]

6. PRINCIPAL AND AGENT ☞178—AGENT TO SELL MORTGAGE—AUTHORITY TO RECEIVE CONSIDERATION—EFFECT.
   On sale of a mortgage at a discount, executed to a dummy mortgagee to avoid the usury law, where the agent of the mortgagor had full authority to represent him in consummating the sale, he had authority to receive the consideration from the buyer, so that the fact of his having done so did not render him the agent of the buyer, so as to charge the buyer with his knowledge of the real nature of the transaction, and thereby invalidate the mortgage for usury.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 680–684; Dec. Dig. ☞178.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. USURY ☞34—MORTGAGE—SALE AT DISCOUNT.

Where a mortgage is executed to a bona fide mortgagee, it may thereafter be assigned, or sold at any discount the parties may agree upon, without violating the usury law, which operates only on the contract by which the instrument had its inception.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 83–89; Dec. Dig. ☞34.]

8. USURY ☞128—MORTGAGE—SALE AT DISCOUNT—REALITY OF INCEPTION OF INSTRUMENT.

For a mortgage to be valid against a subsequent sale of the security at a discount, the original execution must have been in furtherance of a bona fide contract between mortgagor and mortgagee, whereby the security was to be enforceable in the mortgagee's hands, although the bona fides of the transaction is not disproved by the fact that it was understood before execution that the bond and mortgage were to be at once assigned after execution by the mortgagee.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 380–383; Dec. Dig. ☞128.]

9. USURY ☞128—MORTGAGE—SALE AT DISCOUNT—KNOWLEDGE OF BUYER.

Where a mortgage is executed to a mere dummy to pass title to a buyer at a discount, rendering the transaction illegal as effecting a usurious loan, the bona fide belief of the buyer that he was buying the security cannot serve to validate the mortgage as such.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 380–383; Dec. Dig. ☞128.]

10. USURY ☞98—MORTGAGE—SALE AT DISCOUNT—RECOVERY OF BUYER.

Where plaintiff told a mortgagor's agent that he would buy a second mortgage, and the agent, under an attorney's instructions, caused such mortgage to be executed to his stenographer, and by her assigned to plaintiff in consideration of the sum paid for the mortgagor's benefit to discharge another mortgage on the premises, such sum being less than the amount of the mortgage, and the stenographer acting as a dummy only, the transaction was a loan of money at usurious interest, since the discount exceeded the legal rate, and in the hands of the purchaser the security was enforceable only to the extent of the consideration paid.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 205–213; Dec. Dig. ☞98.]

11. USURY ☞128—MORTGAGE—SALE AT DISCOUNT—RECOVERY OF BUYER.

The buyer of a mortgage, for which the mortgagee did not pay full consideration, so that the instrument secured a usurious loan, can enforce such security against the mortgagor only on the theory of estoppel, and to the extent of the consideration paid, even though he purchased without knowledge of the facts.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 380–383; Dec. Dig. ☞128.]

12. DOWER ☞29—"INCHOATE RIGHT OF DOWER"—NATURE—EFFECT.

A wife's "inchoate right of dower" is not an estate or interest in land, but a mere contingent claim, arising, not out of contract, but as an institution of law, which cannot be transferred by grant, but is susceptible during its inchoate state only of extinguishment by the act of the wife in joining with her husband in the execution of a deed to his land.

[Ed. Note.—For other cases, see Dower, Cent. Dig. § 81; Dec. Dig. ☞29.

For other definitions, see Words and Phrases, First and Second Series, Inchoate Right of Dower.]

13. DOWER ☞53—INCHOATE RIGHT—RELEASE—REVIVAL.

Where a wife joined with her husband in the execution of a mortgage to a dummy mortgagee, which was to be immediately assigned to a buyer

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

at a discount which rendered the transaction a usurious loan, and where such mortgage was held to be enforceable in the hands of such buyer to the extent of the consideration paid by him, either by way of estoppel, or by subrogation to the rights of a prior incumbrancer, whom his payment had been used to satisfy, the wife's inchoate right of dower extinguished by her release was not revived, since such revival can be effected only by a complete annulment or cancellation of the husband's mortgage in which she joined.

[Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 108–110; Dec. Dig. ⬙═53.]

14. SUBROGATION ⬙═23—MORTGAGE—PAYMENT OF PRIOR INCUMBRANCE.

Where a mortgage was executed to a dummy mortgagee, and immediately assigned by her to plaintiff, who bought at a discount greater than the legal rate of interest, paying the price to the mortgagor, it being used to discharge a prior incumbrance, and where such plaintiff was ignorant of the facts, and had no intention to make a usurious loan, although the mortgage in his hands was not enforceable against the mortgagor under the usury statute, nevertheless he was entitled to be subrogated to the rights of the holder of the prior incumbrance, which his money had gone to discharge, since, where an invalid and defective mortgage is given to secure an advancement of money made to pay off a prior incumbrance, the lender will be subrogated to the lien of the incumbrance discharged; mere constructive notice of the invalidity of his security, based upon a presumption of knowledge of the law, or upon the recording acts, not being sufficient to defeat the right, in the absence of actual knowledge.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. ⬙═23.]

Laughlin, J., dissenting in part.

Appeal from Special Term, New York County.

Action by Joseph Schanz against Carl Sotscheck and others. From a judgment (86 Misc. Rep. 121, 149 N. Y. Supp. 145) in favor of plaintiff against Carl Sotscheck only, Carl Sotscheck and plaintiff appeal. Modified and affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

William F. Goldbeck, of New York City, for plaintiff.
Henry B. Twombly, of New York City, for defendants Sotscheck.

LAUGHLIN, J. This is an action for the foreclosure of a mortgage executed by the defendants Carl Sotscheck and Julia A. Sotscheck, his wife, on premises owned by him, to one Sarah E. Sinnigar, and delivered to her on the 15th day of February, 1911, as collateral security for the payment of $12,000, evidenced by their bond executed concurrently therewith. The bond and mortgage were, in fact, executed for the purpose of having them assigned to the plaintiff; but that was unknown to him. Concurrently with their execution and delivery to the mortgagees, or within an hour or two thereafter, she assigned the mortgage to the plaintiff; but a corrected assignment executed by her next day was substituted therefor and placed on record.

The mortgagors defended on the ground that the bond and mortgage were void for usury, and they counterclaimed for the cancellation thereof. On a former trial, the defense and counterclaim as pleaded were held to be insufficient; but this court reversed the judgment of foreclosure then entered, and held that the facts pleaded, if proved,

would constitute a good defense and counterclaim. Schanz v. Sotscheck, 160 App. Div. 798, 145 N. Y. Supp. 778. On the second trial the court held that the bond and mortgage had their inception in the purchase thereof by the plaintiff at a usurious discount, and therefore were void, but that Carl Sotscheck, who will be referred to as the mortgagor, was estopped from asserting their invalidity for usury, and consequently the plaintiff was entitled to maintain the action for the foreclosure thereof against his interest in the premises to the extent of the consideration paid by plaintiff for the bond and mortgage, and to a judgment against the mortgagor for any deficiency, but that the wife of the mortgagor was not so estopped, and that as to her the bond and mortgage were void, and she was entitled to judgment accordingly, and adjudging that the sale will be subject to her inchoate right of dower, and dismissing the complaint as against her.

The plaintiff appeals from the judgment in so far as the mortgage is declared void, and limits his recovery to the consideration paid, and dismisses the complaint as to the wife of the mortgagor, with costs, and decrees that the sale shall be subject to her contingent right of dower; and the mortgagor·appeals from the judgment in so far as it decrees that he is estopped to plead usury and that the bond and mortgage are enforceable against him.

There were two mortgages on the premises—a first for $35,000, and a second for $10,000. The second mortgage was overdue, and the owner thereof was threatening foreclosure. The mortgagor was unable to pay the mortgage debt, and had been endeavoring to obtain a further loan on the premises for that purpose. The attorney representing the owner of the second mortgage drew this to the attention of one Zittel, a real estate broker. Zittel called on the mortgagor and was employed to endeavor to obtain *a loan* on the security of the premises, but within a few days thereafter reported his inability to do so. and expressed the opinion that he might be able *to sell* a second mortgage on the premises at a discount of 10 per cent. The mortgagor suggested that a second mortgage be executed for $15,000; but Zittel said that one for that amount could not be negotiated. It was finally agreed that a second mortgage for $12,000 be placed on the premises, and the mortgagor authorized Zittel to sell it at a discount of 10 per cent., and agreed to pay his commissions and expenses, including the mortgage tax and "lawyer's fees," which Zittel stated to him would aggregate about $600.

The plaintiff was a merchant tailor. Zittel who was one of his customers, while at plaintiff's shop ordering a suit of clothes, opened the negotiations, which are now the subject of review, by asking if he would be interested in buying a second mortgage. Plaintiff manifested an interest, and was informed with respect to the location of the property, the owner, and that the mortgage was, or was to be, subject to a first mortgage for $35,000. Nothing was said as to who the mortgagee was; but it is claimed by counsel for the mortgagor that the plaintiff must have understood, from what Zittel stated to him, that the mortgage was not then in existence. It is true that Zittel, during the interview, used expressions indicating that the mortgage was to be given; but he also referred to the mortgage as an existing instrument,

and the conversation as a whole does not indicate that either of them spoke with any degree of accuracy *in the use or tense* of the words employed. Therefore I think it is fairly to be inferred that the plaintiff was led to believe that the mortgage was in existence, for the broker was endeavoring, not to procure from him a loan, but *to sell* a second mortgage to him; but, if he understood that the mortgage was still to be executed, it might well be that he supposed that the mortgagor was to execute a valid mortgage to the broker, or to some one else, and that the mortgagee to be, as a condition of taking it, was desirous of negotiating a sale thereof which would have been perfectly lawful.

The plaintiff viewed the premises, and subsequently agreed to buy the mortgage, and on the 14th day of February, 1911, delivered to Zittel a check for $10,800, payable to the order of Zittel's firm, for the purchase price of the bond and mortgage, and Zittel promised to bring the bond and mortgage to him. There was nothing said between Zittel and the plaintiff about the examination of the title, the preparation of the papers, the insuring of the building or the title, or the employment of an attorney. The plaintiff relied upon his view of the premises on the question whether the property was adequate security, and upon express representations made by Zittel that he was to receive a "first-class," "perfectly good," mortgage. There was nothing in the negotiations to indicate to the plaintiff that anything was required to be done, other than the payment of the money and the delivery of the bond and mortgage, with an assignment thereof, if that were required. It is true that the plaintiff says that he relied on Zittel to bring bring the papers to him as the latter promised; and when asked whether he told Zittel to do anything for him, he answered in the negative and was then asked, "Q. Did you ever ask him to look out for your interests?" and replied, "Mr. Frank Zittel looked out for my interests," and that he did not have an attorney.

The fair inference from this testimony is that the plaintiff had confidence in Zittel, and relied upon the promise that he would receive a good, first-class mortgage; but it does not show that he employed Zittel as his agent, or conferred any authority upon him to employ others for him. The bond and mortgage had not been executed when the plaintiff delivered the check to Zittel. They were dated that day, however, and executed the next day. The interest, which was payable semiannually at the expiration of each six months, was paid by the mortgagor until February 15, 1913, when the principal became due, and he then defaulted in the payment of both interest and principal. No question with respect to the validity of the bond and mortgage was raised, and no thought of usury entered the mind of the mortgagor, according to his testimony, until the plaintiff, after having had the premises appraised, refused an application for an extension of the time of payment and commenced this action. The first plaintiff knew or heard of the claim of usury was when the answer interposing it as a defense was served.

Zittel, without authority from and without consulting the plaintiff, but on his own responsibility, and doubtless with a view to delivering to the plaintiff a valid bond and mortgage as he had agreed, and acting for himself to earn a commission and under his employment by the

mortgagor, who had agreed to pay all the expenses, including the "lawyer's fees," employed one Day, an attorney who was associated with the attorney who had charge of the second mortgage which was to be paid off, to arrange the legal details "to create," as he expressed it, a legal second mortgage for $12,000, which he said he informed the attorney he had made an agreement with the mortgagor "to sell" to the plaintiff at a discount of 10 per centum. Day, who considered that Zittel was his client, thereupon employed the Lawyers' Title Company to examine the title, with a view to insuring it for plaintiff's benefit, and drew the bond and mortgage running to Miss Sinnigar, who was a stenographer in his office, whom he selected for that purpose without further authority from or consultation with any one, *as mortgagee and obligee*. The closing was at Day's office, and there were present the attorney representing the owner of the mortgage that was to be paid off, a representative of the Title Company, Zittel, the mortgagor, and another attorney representing him. The plaintiff was not present, and had not authorized any one to represent him, and had no notice or knowledge of what took place, or of the steps previously taken, and knew none of the parties, other than Zittel.

An estoppel certificate had been prepared by Day, and he requested the mortgagor to execute it, and on its being executed and redelivered to him he delivered it to the representative of the Title Company, who retained it. The estoppel certificate described the mortgage and recited that it was about to be assigned by the mortgagee to the plaintiff, and that, in order "to enable said assignment to be made" by her, the mortgagor certified "that said mortgage is a valid lien on said premises for the full amount of principal and interest now owing thereon, namely, twelve thousand ($12,000) dollars, and interest thereon" from date, "and that there are no defenses or offsets to said mortgage, or to the bond secured thereby, and that all the other provisions of said bond and mortgage are in force and effect." The attorney for the mortgagor delivered an executed bond and mortgage to Day, who, after examining them, passed them over to the representative of the Title Company, and the mortgage was recorded that day. Zittel, who had deposited plaintiff's check for $10,800 to the credit of his firm, thereupon produced two certified checks of his firm to their own order, one for $10,000, and the other for $2,000, and indorsed them to the order of the mortgagee, and delivered them to Day, who took them to the mortgagee, who was in an adjoining room, and she indorsed them over to the mortgagor, who indorsed the check for $10,000 and delivered it in payment of the second mortgage, and indorsed the other check to the order of Zittel's firm, and received their check for $200, which he delivered in part payment of the interest on the second mortgage that was being paid off.

Thus the mortgagor received and retained to his own use $10,200, which is the amount he was to receive according to the arrangement between him and Zittel. Title and fire insurance policies, payable to plaintiff as mortgagee, were issued on the same day. Zittel took the bond to the plaintiff's store and left it with his bookkeeper, and subsequently took the mortgage and assignment and title insurance policy and left them with the bookkeeper. This, however, was in the absence

of the plaintiff, who testified that he did not examine any of the papers. Of the net amount of $600 received by Zittel's firm, they paid Day $268.50, and retained the balance of $331.50 for their services. As already stated, the assignment of the mortgage was executed and delivered at the same time, or an hour or two thereafter, and a corrected assignment was substituted therefor the next day, on the suggestion of the Title Company that the street number of the house on the premises should be inserted.

The answer charged, in effect, a usurious agreement exacted of the mortgagor and his wife by the brokers, who obtained for themselves and plaintiff, or one of them, a bonus of $1,600, and that the mortgagee was a dummy for plaintiff, or for the brokers, or for both, and furnished no part of the consideration, and that the scheme originated in, and was consummated by, a conspiracy between plaintiff, the brokers, and the mortgagee to exact a usurious rate of interest for a loan of the money. The mortgagor and his wife failed to prove the defense pleaded, excepting to the extent of showing that the mortgagee had no interest and was used as a dummy or conduit, as already stated.

It is claimed that the defense proved was not alleged; but I think the evidence was admissible under the answer, and that, if the facts proven constitute a defense, they were sufficiently pleaded.

[1-6] It is quite clear that the broker, Zittel, attempted to evade the usury law, by giving the bond and mortgage an apparently valid inception. I would not say that the evidence shows that he had the usury law in mind, or intentionally violated it, or any other law; but he knew or understood that the bond and mortgage for some reason would not be valid if they ran to the plaintiff and he loaned the money thereon at a discount of 10 per cent. of the face value of the instruments. Doubtless he had been advised or informed that the same result could be accomplished lawfully in another way, as by creating a second mortgage and selling and assigning it; and evidently the attorney employed by him was of like opinion, for he proceeded without consultation or question to create an apparently valid bond and mortgage. If the plaintiff had knowledge, or was chargeable with knowledge, that the mortgage had no inception until it was assigned to him, he would not be in a position to invoke the doctrine of estoppel, and could not enforce the mortgage, for that would constitute the transaction, in effect, a loan by him at a usurious discount. Smith et al. v. Cross et al., 90 N. Y. 549; Siewert v. Hamel et al., 91 N. Y. 199; Dunham v. Cudlipp, 94 N. Y. 129; Gilbert v. Real Estate Co., 155 App. Div. 411, 140 N. Y. Supp. 354.

It, however, satisfactorily appears that plaintiff was not a party to that scheme, and that he purchased the bond and mortgage in good faith, relying on the representations of Zittel, who was authorized by the mortgagor to sell the bond and mortgage, and therefore had implied authority to represent that they were valid and enforceable, which is the effect of the representations made as intended and understood, and the mortgagor is therefore estopped from contending to the contrary. See Barnett v. Zacharias, 24 Hun, 304, affirmed 89 N. Y. 637; Ahern v. Goodspeed, 72 N. Y. 108; Fleischmann v. Stern, 90 N. Y. 110. The only significance to be attached to the estoppel certificate is as show-

ing that the mortgagor knew that the broker had negotiated a sale of the bond and mortgage to the plaintiff, and it presumptively shows his authority to do so, or, if not, that the mortgagor ratified his acts. Bliven v. Lydecker et al., 130 N. Y. 102, 28 N. E. 625; Ahern v. Goodspeed, supra; Krumm v. Beach, 96 N. Y. 398.

The estoppel certificate was not brought to the attention of the plaintiff, or of any one authorized to represent him. Day did not represent the plaintiff, either in selecting the mortgagee or in preparing or passing upon the papers. He was employed by and represented the brokers only, or the brokers and the mortgagor, and therefore neither are his acts chargeable to the plaintiff nor is his knowledge imputable to him; nor would the plaintiff be liable to him for services. The trial court found that both Day and Zittel were agents for the plaintiff to a limited extent. Zittel was, in fact, the agent of the mortgagor to negotiate a sale of the bond and mortgage, and was acting for him in in receiving the consideration from plaintiff. In Henken v. Schwicker, 174 N. Y. 298, 66 N. E. 971, it was held that a broker employed by the borrower to negotiate a contract for *a loan* was not authorized by the borrower to receive the money, and was therefore the agent of the lender in receiving a check for the money before the bond and mortgage were executed; but here the broker had full authority to represent the mortgagor and to consummate the sale of the bond and mortgage, and that authorized him to receive the consideration for the mortgagor, and the case falls within the doctrine of Yeoman v. McClenahan, 190 N. Y. 121, 82 N. E. 1086.

We are of opinion that the findings with respect to Day and Zittel having acted as agents of the plaintiff are against the preponderance of the evidence. They should therefore be reversed, and findings substituted therefor to the effect that neither of them acted in the premises as agent for the plaintiff.

[7-11] After a note, bond, or other obligation has had *a valid inception,* it may be sold at any discount the parties agree upon, without violating the statute against usury, which operates only on the contract by which the instrument has its inception, and therefore, if the bond and mortgage had had a valid inception—that is, without the taint of usury, had been issued to an obligee and mortgagee to take effect according to their tenor before they were assigned to the plaintiff—he could enforce them for the full amount, or for the amount they were intended to secure, no matter at what discount he purchased them. Siewert v. Hamel, supra; Dunham v. Cudlipp, supra; Union Dime v. Wilmot, 94 N. Y. 221, 46 Am. Rep. 137. To give an instrument a valid inception, it is essential that the transaction be real, and that is not disproved by the mere fact that it was understood in advance that the bond and mortgage were to be at once assigned. See Dunham v. Cudlipp, supra. The determining factor is whether there was an actual bona fide contract between the mortgagor and mortgagee, by which the bond and mortgage were enforceable in the hands of the latter; for, if not, and the mortgagee was merely a dummy or conduit to pass title, and the actual transaction to which the statute applies was that between the mortgagor and the assignee, it would be in effect a loan by the latter at a usurious rate of interest, even though, as here,

those facts were concealed from the assignee, and he was led to believe that he was *purchasing* the securities. Eastman v. Shaw, 65 N. Y. 522; Miller v. Zeimer, 111 N. Y. 441, 18 N. E. 716; Tiedemann v. Ackerman, 16 Hun, 307, affirmed 84 N. Y. 677; Verity v. Sternberger, 62 App. Div. 112, 70 N. Y. Supp. 894, affirmed 172 N. Y. 633, 65 N. E. 1123; Mason v. Lord, 40 N. Y. 476; Bliven v. Lydecker, 130 N. Y. 102, 28 N. E. 625; Smith v. Cross, 90 N. Y. 549; Claflin v. Boorum, 122 N. Y. 385, 25 N. E. 360; Dunham v. Cudlipp et al., supra. There are other authorities upon which the plaintiff relies, indicating that in such circumstances the securities may be enforced for the full amount thereof, on the theory that the borrower, by passing the legal title and giving the securities an apparent valid inception, should not be heard, as against one purchasing them in good faith, to question the bona fides of the original transaction, upon which he has led the purchaser to rely (see Rider v. Gallo, 153 App. Div. 334, 137 N. Y. Supp. 1015; Union Dime v. Wilmot, supra; Siewert v. Hamel, supra; Dunham v. Cudlipp, supra); but we are of opinion that, on the facts in the case at bar, the authorities holding that the securities are enforceable only to the extent of the consideration paid are controlling. If the transactions between the mortgagor and the mortgagee were had in good faith and without intent to evade the statute against usury, and it should be held that the mortgagee parted with some consideration for the bond and mortgage, but not full consideration, still that would not change the result, for the transaction would be subject to the condemnation of the usury statute, and the securities could not have been enforced by the mortgagee, and the only theory upon which they would be enforceable by an assignee is that of estoppel, in which case, to prevent injustice and fraud, the courts hold that they are enforceable to the extent of the consideration paid or parted with in good faith. Verity v. Sternberger, supra; Miller v. Zeimer, supra; Payne v. Burnham, 62 N. Y. 69; Smyth v. Munroe, 84 N. Y. 354; Mechanics' Bank v. Townsend, 29 Barb. 569; Rollins v. Barnes, 11 App. Div. 150, 42 N. Y. Supp. 954. See, also, Sickles v. Flanagan, 79 N. Y. 224.

It would not do to hold that the usury law may be evaded in the manner shown by the evidence in this case. The vice at which the usury law was aimed exists in such a transaction quite as much as if the parties were permitted to negotiate directly for the usurious discount; and, if this were sustained as a successful evasion of the usury law, the statute against usury would be of little practical value.

The question remaining is whether the court erred in dismissing the complaint as against the wife of the mortgagor. It may be that the transaction inured to her benefit quite as much as that of her husband, for the entire proceeds were applied by him to the payment of a mortgage then existing on the property, by the foreclosure of which, if she joined therein, her contingent right of dower would have been cut off; but it was neither shown that she joined in that mortgage, or that she was liable for the debt secured thereby, and therefore she is not chargeable with his representations on the theory that she received the benefit of the transaction. Krumm v. Beach, supra. Her husband, in her behalf as well as for himself, was authorized, I think, to negotiate the bond and mortgage *with the mortgagee,* for that was

the purport of the papers as presented to her for execution and executed by her; but there is no evidence that she conferred any authority on her husband, or was aware of the plan by which he was *to sell* the bond and mortgage to plaintiff, and therefore in so doing he was not her agent. Parker v. Collins et al., 127 N. Y. 185–188, 27 N. E. 825; Payne v. Burnham, supra. It has been held that a subsequent mortgagee or judgment creditor may interpose the defense of usury against a prior mortgage. Union Dime Savings Inst. v. Wilmot, supra; Mason v. Lord, 40 N. Y. 476. By analogy, I think a wife may interpose the defense to protect her inchoate right of dower, and, since she is not estopped, the bond and mortgage are not enforceable against her. Since the mortgage was void, I think her inchoate right of dower remains unaffected thereby. See Simar v. Canaday, 53 N. Y. 298, 13 Am. Rep. 523; Malloney v. Horan, 49 N. Y. 111, 10 Am. Rep. 335; Wilkinson v. Paddock, 125 N. Y. 748, 27 N. E. 407; Hinchliffe v. Shea, 103 N. Y. 153, 8 N. E. 477; Mackenna v. Buffalo Fidelity Trust Co., 184 N. Y. 411, 77 N. E. 721, 3 L. R. A. (N. S.) 1068, 112 Am. St. Rep. 620, 6 Ann. Cas. 471; Clifford v. Kampfe, 147 N. Y. 383, 42 N. E. 1.

It follows that the judgment and order should be affirmed, with costs to the respondent Julia A. Sotscheck against plaintiff appellant, but without costs to either appellant.

INGRAHAM, P. J. [12] I concur with my Brother LAUGHLIN, except in so far as he recommends the affirmance of the judgment in favor of Julia A. Sotscheck. The court having sustained the validity of the plaintiff's mortgage to secure the amount actually loaned by the plaintiff to the defendant, and the wife having joined in the mortgage, thereby releasing her right of dower, it seems to me that such right of dower is extinguished so far as necessary to protect the plaintiff in the enforcement of his mortgage.

"The settled theory of the law as to the nature of an inchoate right of dower is that it is not an estate or interest in land at all, but is a contingent claim arising, not out of contract, but as an institution of law, constituting a mere chose in action incapable of transfer by grant or conveyance, but susceptible only during its inchoate state of extinguishment. By force of the statute this is effected by the act of the wife in joining with her husband in the execution of a deed of the land. Such deed, so far as the wife is concerned, operates as a release or satisfaction of the interest, and not as a conveyance, and removes an incumbrance, instead of transferring an interest or estate." Witthaus v. Schack, 105 N. Y. 332, 11 N. E. 649.

After examining the cases, the court conclude:

"It would seem clear from the authorities that the act of the wife in joining her husband in the execution of a deed of his lands does not constitute her a grantor of the premises, or vest in the grantee any greater or other estate than such as he derives from the conveyance of the husband. Its effect is merely to extinguish a contingent claim existing as a possible incumbrance, and ceasing to exist by reason of the execution of the husband's deed, and to be revived only by the subsequent cancellation or annulment of his conveyance."

[13, 14] By joining in the mortgage to the plaintiff, therefore, the wife extinguished her inchoate right of dower, which could only be re-

vived by the annulment or cancellation of the husband's mortgage. If that had been declared void by reason of usury, or for any other cause, undoubtedly the wife's right of dower would never have been extinguished, and she would, therefore, be entitled to enforce it if it ever became absolute by the death of her husband during her life. The court, however, has found that the mortgage was valid as against the husband and created a lien upon his interest in the land to the extent of the money actually lent to the mortgagor, and has affirmed a judgment enforcing that mortgage. Whether this mortgage is sustained as against the husband by way of estoppel or for any other reason, it is a valid mortgage, subjecting his real property to a lien for the amount due to him, and by the act of the wife in joining with her husband in the mortgage her inchoate right of dower to that extent was extinguished. In Hinchliffe v. Shea, 103 N. Y. 153, 8 N. E. 477, it was said:

"The joinder by a married woman with her husband in a deed or mortgage of his lands does not operate as to her by way of passing an estate, but inures simply as a release to the grantee of the husband, of her future contingent right of dower in the granted or mortgaged premises, in aid of the title or interest conveyed by his deed or mortgage. Her release attends the title derived from the husband, and concludes her from afterward claiming dower in the premises as against the grantee or mortgagee, so long as there remains a subsisting title or interest, created by his conveyance."

It was further held in that case that her act in joining in the conveyance becomes a nullity whenever the title or interest to which the right is incident is itself defeated. Now that condition has not arisen in this case. The mortgage of the husband had not itself been defeated, but upheld and enforced. Therefore it seems to me that she is concluded from claiming dower in the premises as against the mortgagee, so long as there remains a subsisting title or interest created by the mortgage; but, even if Judge LAUGHLIN'S opinion is correct, it seems to me clear that the plaintiff was entitled to be subrogated to the prior mortgage upon the premises, which was paid off by the money furnished by the plaintiff at the time the mortgage in controversy was executed. It seems that the plaintiff paid the money which was secured by this mortgage in two checks. One was for $10,000 to the order of the mortgagor, and he indorsed that check over to the McCarthy estate in payment of the principal of their mortgage, which had been executed by the mortgagor and his wife. Plaintiff also furnished another check, for $2,000, to the order of the mortgagor, which was indorsed by him, and of which $200 was paid to the McCarthy estate to pay the accrued interest on that mortgage. The plaintiff having been exonerated from any intention to make a usurious loan on the premises in question, it is difficult to see why he was not entitled to be subrogated to the interest of the McCarthy estate in the prior mortgage on the property to the extent to which his money was used to pay off that mortgage.

In 37 Cyc. at page 381, it is said:

"A person who, under such circumstances that he is entitled to subrogation, pays the debt of another secured by mortgage, is subrogated to the rights under the mortgage and can enforce the same for his own benefit. ＊ ＊ ＊ In general, any person having a subsequent interest in the premises and not primarily liable for the mortgage debt, who pays off the mortgage, thereby

becomes an equitable assignee of it, and may keep the mortgage alive and enforce the lien for his own benefit."

And at page 462 it is said:

"But where an invalid or defective mortgage is given to secure an advancement of money made for the express purpose of paying off a prior incumbrance, the mortgagee in the defective mortgage will be subrogated to the lien of the incumbrance so discharged, in the absence of intervening incumbrances, and mere constructive notice of the invalidity, based upon a presumption of knowledge of the law, or upon the recording acts, is not sufficient to prevent the right from attaching, if the mortgagee did not have actual knowledge, and the failure of actual knowledge was not mala fides."

And at page 464:

"And where one pays off an existing mortgage at the request of the mortgagor, in just expectation that he would have like security for his money, he thereby, under the doctrine of equitable assignment, becomes entitled to subrogation to the lien of the mortgage so paid off, even though the mortgage given to him was inoperative as against the owners of an equity, because of the pendency of a bill filed by them to enforce their equity and establish a trust in the premises."

It seems to me that the situation in this case justifies the application of this principle. Here the plaintiff, in perfect good faith, based upon the representation of the mortgagor's agent that he would have a good mortgage for that amount. He relied upon that representation, he paid his money to the mortgagor, and the mortgagor thereupon used $10,200 of it to pay off a prior valid mortgage on the premises as to which the wife's right of dower had been extinguished. It seems to me clear that under any circumstances the plaintiff would be entitled to be subrogated to the right of the mortgagee of the first mortgage and entitled to enforce that right as against the mortgagor and his wife.

On the appeal of the plaintiff, therefore, I think the judgment should be modified, by striking out the provision that the complaint be dismissed as to the defendant Julia A. Sotscheck, and that the bond and mortgage be adjudged invalid and void for usury as against her; and the judgment should be further modified by directing the premises to be sold free from the dower interest of such defendant, and, as so modified, affirmed, with costs against the said Julia A. Sotscheck in favor of the plaintiff in this court and in the court below. Settle order on notice.

McLAUGHLIN, DOWLING, and HOTCHKISS, JJ., concur.